Aycock Hosiery Mills *v.* Maryland Casualty Company.

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

### 1. WORKMEN'S COMPENSATION. INFANT.

In view of section 2 (b) and sections 6 and 7 of the Workmen's Compensation, coupled with the implied admission arising from averments of the petitioner for compensation that the employee was legally employed, and the employee's election to proceed under the Compensation Act, a judgment in an infant's suit for award, supported by evidence that his employment was legal and that the injury arose out of and in the course of employment,

Citing: Wilson v. Schaefer, 107 Tenn. (23 Pickle), 330; Hurt v. Long, 90 Tenn. (6 Pickle), 445; Cody v. Roane Iron Works, 105 Tenn. (21 Pickle), 515.

### 2. WORKMEN'S COMPENSATION. MINORS.

If a minor elects to ratify the contract of his employment, or such an election is made for him by proper authority, he is entitled to recover under the Workmen's Compensation Act for injuries received in the course of employment. (Post, p. 566.)

Citing: Western Union Tel. Co. v. Ausbrooks, 148 Tenn. (21 Thomp.), 622.

### 3. WORKMEN'S COMPENSATION. MINORS.

Where an employer carries Workmen's Compensation insurance under a policy wherein it was agreed that all of the provisions of the Workmen's Compensation Law should be a part of the contract of insurance, and to indemnify the employer against loss by reason of liability imposed by law, or damages on account of injuries to employees, including death resulting therefrom, and where a minor employee was injured and the attorney for the insurance company took charge of the matter and defended an action brought to recover workmen's compensation, in which the court awarded compensation, no judgment was ever entered

and a nonsuit was taken; thereafter a common-law action for damages was brought against the employer and the insurance company undertook the defense of this case, but coupled its action with the customary reservations against liability, and where a judgment was rendered against the employer, the insurance company is clearly liable to the employer for damages in an amount equal to the judgment and costs. (Post, p. 567.)

Citing: Douglas v. U. S. F. & G. Co., 37 A. L. R., 1471; 34 A. L. R Note, p. 738; Anderson v. Surety Co., 21 A. L. R., 761; Attleboro Mfg. Co. v. Frankfort Marine Ins. Co., 171 Fed., 495.

4. **WORKMEN'S COMPENSATION. COMMON-LAW ACTION FOR INJURIES OF EMPLOYEE. LIABILITY OF INSURER.**
Where an insurance company is liable to an employer for workmen's compensation of an employee, and it does not act in good faith in defending a suit for workmen's compensation, in the defense of a common-law action brought after a nonsuit was taken in the compensation case, the measure of damages is the entire amount of the judgment and costs rendered against the employer in the common-law action. (Post, p. 569.)

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

CHAS. C. MOORE and ALLAN S. KELLY, for complainant, appellee.

C. G. MILLIGAN, for defendant, appellant.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainant, observing sections 41 and 42 of the Workmen's Compensation Act, covered its risks by insurance with the defendant and this action arose from the relation of defendant, the insurer, and complainant,

the insured employer, under a policy wherein the insurer agreed:

"I. To pay to the person and in the manner provided therein, any sum due or to become due from this employer because of any such injuries, including death resulting therefrom, under certain Statutes cited and described in endorsements attached to this policy, each of which Statutes is herein referred to as the Workmen's Compensation Law. It is agreed that all of the provisions of each Workmen's Compensation Law cited and described in endorsements attached to this policy shall be and remain a part of this contract, as fully and completely as though written herein, so far as they apply to compensation while this policy shall remain in force, and all premiums provided by this policy, or by any endorsement hereon shall be fully earned whether any such Workmen's Compensation Law, or any part of any such, is now, or shall hereafter be, declared invalid or unconstitutional. This obligation for compensation shall include all provisions of the Workmen's Compensation Law respecting funeral expenses, medical, surgical, nurse and hospital services, medical or surgical apparatus or appliances or medicines. Nothing herein contained shall operate to so extend this policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited and described in an endorsement hereto attached.

"II. To indemnify this employer against loss by reason of the liability imposed upon this employer by law for damages on account of such injuries, including death resulting therefrom.

"III. To serve this employer (1) by the inspection of work places set forth in the declarations whenever deemed necessary by the company and thereupon to

suggest to this employer such changes and improvements as may operate to reduce the number and severity of personal injuries during work; and (2) upon notice of such injuries so sustained by investigation thereof and by settlement of any resulting claims in accordance with the law.

"IV.   To defend in the name and on behalf of this employer any suits or other proceedings which may at any time be instituted against this employer on account of such injuries, including death resulting therefrom, including suits or other proceedings alleging such injuries or death and demanding damages, or compensation therefor, although such suits, proceedings, allegations and demands are wholly groundless, false or fraudulent.

"V.   To pay all costs taxed against this employer in any legal proceeding defended by the company, all interest accruing after entry of judgment, and all expenses incurred by the company for investigation, negotiations for settlement, or defense of claim or suits; further to pay the cost of such immediate surgical relief as is imperative at the time of an accident.

"VII.   This policy shall cover such injuries, including death resulting therefrom, sustained by any employee or employees legally employed by this employer.   . . ."

The Chancellor found that the defendant refused to settle the claim of the injured employee, assumed control of the defense in an action to recover under the Compensation Act and wrongfully and negligently handled that defense and conducted itself in such manner as to cause a loss to the complainant of $5350.75 for which he gave a decree. The Court of Appeals concurred in the finding of facts by the Chancellor and with the exception of a slight modification hereinafter mentioned, affirmed his

decree. Both parties filed petition for *certiorari,* writs were granted, and the cause is brought here upon *certiorari* to the Court of Appeals.

The judgments of the Chancellor and the Court of Appeals do not rest upon any specific provision of the policy, but as indicated by their opinions upon the obligation imposed by law upon the indemnitor to act in good faith and exercise ordinary care when it assumes authority under the policy to adjust claims or to defend suits against the indemnitee.

The facts found by the Chancellor and the Court of Appeals are in substance as follows:

Judson Chandler, an employee under sixteen years of age, was injured March 13, 1920. Upon notice and report, by the employer, of the accident the defendant's attorney and manager, Mr. Hitzfield, made an investigation and wrote complainant on April 27, 1920:

"I have thoroughly investigated the accident in which Judson Chandler was injured and I am of the opinion that this man is not entitled to compensation by reason of the fact that his injuries did not 'Arise out of and in the course of his employment.' "

And following this a letter of June 24, 1920:

"In response to your very earnest plea in behalf of our assured and the injured, Judson Chandler, I have decided to pay the total amount of medical expense allowable under the Workmen's Compensation Law in this case even though there is no liability, namely $100.

. . .

"You understand that both myself and the officials at the general office of our company feel that this is not a case covered by compensation and that we are in no way liable for any amount other than the first aid serv-

ice. I have however, departed from the question of liability and am paying this $100 because we appreciate the business of this concern and feel disposed to help them share the burden they have assumed from a standpoint of humanity in this case. . . ."

On September 25, 1920, the employee, through his father as next friend, filed suit in the county court of Marion County, where the employer and the employee resided, to recover under the Compensation Act. The defendant assumed control of the defense under paragraph IV of the policy and filed answer in the name of Aycock Hosiery Mills, denying liability because the injury did not arise out of and in course of employment.

In October, 1920, the cause was transferred by consent to the circuit court where at the February term, 1921, it was called for trial and witnesses testified, among them J. W. Chandler, the nominal plaintiff, who stated in the course of his testimony that his son Judson was fifteen years of age when the injury occurred and that he, the father, did not procure an employment certificate. The certificate here referred to was that required by section 5, Chapter 57, Acts of 1911, and section 3, Chapter 77, Acts of 1917.

At that time witnesses were available to contradict the statement of the petitioner that his son was not legally employed by complainant. Though representing the insured, the insurer either applied for or acquiesced in an order continuing the cause to enable it to plead and set up this new fact. The effect of its establishment would have been to absolve the insurance company of liability measured by the schedules of the Compensation Act and to fasten an absolute liability upon the insured employer measured by rules of the common law.

When the superintendent of the Hosiery Mills heard of this action by the Casualty Company he protested to Mr. Hitzfield, its attorney and agent, and charged bad faith in handling the claim. The Casualty Company thereupon abandoned this new defense but retained control of the case for the purpose of having a judicial interpretation of the meaning of section 1 (d) of the Compensation Act. The cause was subsequently heard or additional proof introduced, and witnesses testified that an employment certificate was presented by Judson Chandler at the time of his employment and that the certificate remained on file in the employer's office until it was displaced or destroyed by a Government inspector.

No record was kept by the official or his deputy clothed with power to issue employment certificates in the county. Mr. McReynolds, deputy of the county superintendent clothed with authority to issue employment certificates, testified in the common-law action, where the legality of Judson Chandler's employment was at issue, that he did not recall issuing the certificate but that he could not be positive that he did not do so. He stated that he had no copy of it in his office but followed this statement with the explanation that about Christmas 1918-19 the blanks upon which such certificates were issued were exhausted and when he received a supply it was so scant that instead of making a carbon copy for preservation in his office he issued certificates to those who applied without making such copy or without keeping a record of it.

On the other hand witnesses for the defendant in the common-law action testified that when Judson Chandler applied for a position he was refused employment until he produced an employment certificate and upon its subsequent production he was given employment.

It was also shown by parole proof that the certificate was filed in the office of the company and kept on file until displaced by the act of the Government inspector.

*(1)* In view of section 2 (b) and sections 6 and 7 of the Compensation Act coupled with the implied admission arising from the averments of the petitioner for compensation that the employee was legally employed, and the employee's election to proceed under the Compensation Act, a judgment in the infant's suit for award supported by evidence that his employment was legal and that the injury arose out of and in course of employment would have been conclusive, in the absence of fraud. *Wilson* v. *Schaefer,* 107 Tenn., 330; *Hurt* v. *Long,* 90 Tenn., 445; *Cody* v. *Roane Iron Works,* 105 Tenn., 515.

*(2)* In *Western Union Tel. Co.* v. *Ausbrooks,* 148 Tenn., 622, Chief Justice GREEN in the opinion said: "We doubt that a minor, although unlawfully employed, should be deprived of the benefits of our compensation statute, if he claims them. Our child labor laws penalize the employer, not the child. . . . The benefits of the Workmen's Compensation statute are merely incidents or consequences which the law imposes upon employment contracts. If the minor elects to ratify the contract of his employment, or such an election is made for him by proper authority, then he may claim all the earned benefits of his contract."

In a proper proceeding before a court with jurisdiction of the parties and the subject-matter the infant employee was suing under the Act. At the subsequent hearing referred to, the trial judge found that the infant employee was entitled to the benefits of the Workmen's Compensation Act, and that he sustained injury arising out of and in course of his employment that produced tempo-

rary total disability for nine weeks, and thereafter a permanent partial disability of twenty-five per cent in the use of one leg. The trial judge did not go further and ascertain with precision the amount of the benefit based on previous earnings but instructed counsel in the case to prepare a decree based upon the previous earnings of the petitioner.

(3) A controversy was made by the attorney for the petitioner and Mr. Hitzfield, the attorney for the Insurance Company, as to the amount of compensation. This controversy related to the provisions of section 2 (c) of the Compensation Act which defines average weekly wages. The Insurance Company insisted that compensation based on previous earnings could not exceed $300 distributed over 175 weeks. The petitioner insisted that the compensation would amount to $800 distributed over 175 weeks. As a result of this controversy and the omission of the trial judge to determine this latter element in the basis for the award, no judgment was entered in the compensation case and a delay of a year or more followed.

Pending the delay Aycock Hosiery Mills was insisting on a disposition of the case. Mr. Aycock, president of the Hosiery Mills, testified: "I told him (referring to Mr. Hitzfield) that it was cheaper to settle the case than to continue the fight and if he would not pay it I would, and he insisted on continuing the fight in order to establish a precedent."

This interview occurred at Chattanooga about a month after the compensation case was last heard by the trial judge. Mr. Carter, who heard the conversation, testified: "When Mr. Aycock brought the question up Mr. Hitzfield told him the Insurance Company would accept liability under any circumstances, that they wanted to set

a precedent—establish a precedent, and Mr. Aycock told him that if they would not accept liability he wanted to settle the case then."

In the meantime the courthouse at Jasper was destroyed by fire and all the records burned. In May, 1922, counsel for petitioner and counsel for the Maryland Casualty Company agreed to restore the case to the trial docket for another trial. When this was done the employee moved for and was allowed to take a nonsuit in the compensation case. On May 29 the employee filed a common-law action for damages against the Aycock Hosiery Mills. The Casualty Company undertook the defense of this case, but coupled its action with a cautionary reservation against liability. It was insisted in defense of the common-law action that the employment by the Hosiery Mills of Judson Chandler was legal, and that his remedy was under the Compensation Law. This fact became an issue in the common-law trial. It was presented to the jury upon contradictory evidence and the jury found the facts against the Hosiery Mills and assessed the damages at $5000. The judgment was affirmed on appeal and the Hosiery Mills compelled to pay, in addition to the recovery of $5000, $350.75 costs.

The facts presented by the record make a clear case of liability. The contract of insurance created a relation out of which grew the duty of the Casualty Company to exercise not only good faith but ordinary care. It assumed defense of the suit brought by the employee under the Compensation Act to the exclusion of the defendant. Instead of disclaiming liability and retiring from the case, when it learned of the controversy over the issuance of an employment certificate, it exhibited bad

faith in its effort to protect itself at the hazard of its indemnitee by setting up the defense that the employment was illegal.

When, after protest from the insured that defense was abandoned, the Casualty Company refused to adjust the claim and according to the testimony of Aycock and Carter prevented the Hosiery Mills from adjusting it. The Casualty Company was given an opportunity to abandon the contest and let the employer bring the compensation case to a final judgment determinative of its liability. Moreover there was negligent failure to bring about the entry of a final judgment after the trial judge found a case of liability under the Compensation Act; and after dallying with the claimant over the measure of compensation for a year the Casualty Company negligently agreed to restore the case to the docket as upon new trial.

An insurer assuming under its policy to control litigation against the insured must act in good faith and with reasonable diligence and caution. *Douglas* v. *U. S. F. & G. Co.*, 37 A. L. R., 1471. That obligation attended the contract, and liability for breach of the obligation arises out of the injurious conduct of the insurer who assumed to act under the contract. 34 A. L. R., Note, p. 738, and cases cited: *Anderson* v. *Surety Company*, 21 A. L. R., 761; *Attleboro Mfg. Co.* v. *Frankfort Marine Insurance Co.*, 171 Fed., 495.

(4) The Court of Appeals, though concurring in the conclusion of the Chancellor upon the law and facts, directed a modification of the decree so as to allow a credit for such sum as the employee might have received under the Compensation Act, probably upon the reasoning that

the Casualty Company would not have been liable under the Compensation Act. It must be presumed that the evidence in the compensation case authorized the conclusion of the trial judge that the infant employee was entitled to compensation measured by the schedule of the Act upon final judgment. In that case the insurer would have been liable under the policy. That liability cannot therefore be deducted from the greater liability fixed upon the employer through the acts of the insurer.

To this extent the judgment of the Court of Appeals must be reversed with the result of affirming the Chancellor.