Isa **COPPAGE**, Plaintiff-Appellee,

v.

**FIREMEN'S FUND INSURANCE COMPANY**, Defendant-Appellant.

No. 16894.

United States Court of Appeals
Sixth Circuit.

June 13, 1967.

**622**

James W. Watson, Memphis, Tenn., for appellant, Laughlin, Watson, Garth-

right & Halle, Memphis, Tenn., of counsel.

Henry H. Hancock, Memphis, Tenn., for appellee, Farris, Hancock & Mitchell, Memphis, Tenn., of counsel.

Before EDWARDS and CELEBREZZE, Circuit Judges, and BATTISTI, District Judge*.

BATTISTI, District Judge.

This is an appeal from a judgment entered on a jury's finding that appellant Fireman's Fund Insurance Company acted in bad faith in failing to settle within policy limits a personal injury claim which one Olivette Veasley had made against its insured, appellee Isa Coppage. Appellant urges that there was no evidence offered from which a jury could reasonably conclude that it had acted in bad faith and, therefore, the District Judge erred in denying its motion for a directed verdict.

Olivette Veasley's claim against appellee arose out of an automobile accident in Memphis, Tennessee on March 26, 1961, where appellee lost control of her automobile and collided with a parked police cruiser. On impact Olivette Veasley was thrown from appellee's car and sustained personal injuries.

The appellant was quickly notified of the accident and subsequently assigned its adjuster George Turnage to investigate the matter. Almost from the commencement of his investigation Turnage recognized that liability to Olivette Veasley was clear.

On July 21, 1961, Olivette Veasley, who was represented by Attorney Chiapella, filed an action against appellee in the Circuit Court of Shelby County, Tennessee seeking damages far in excess of the $5000.00 liability limitation contained in the policy issued by appellant. Pursuant to the provisions of the policy, appellant undertook to defend the action. Since damages were sought in excess of the coverage, appellee was informed that

---

* Honorable Frank J. Battisti, United States District Judge for the Northern District of Ohio, sitting by designation.

she was at liberty to obtain personal counsel. Shortly thereafter appellant was notified that Attorney Ronald M. Harkavy would represent appellee.

Olivette Veasley's case was tried to a jury in December of 1963, resulting in a verdict of $31,250.00. On June 25, 1964, appellee filed the instant action to recover the difference between Olivette Veasley's judgment and the policy limits.

■■■■ Under Tennessee law, which governs this action, an insurer having exclusive control over the investigation and settlement of a claim may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within policy limits. Aycock Hosiery Mills v. Maryland Casualty Co., 157 Tenn. 559, 11 S.W.2d 889; Southern Fire & Casualty Co. v. Norris, 35 Tenn. App. 657, 250 S.W.2d 785; Perry v. United States Fidelity & Guaranty Co., 49 Tenn.App. 662, 359 S.W.2d 1. The insurer's conduct in handling a claim must be viewed from the principle that while an insurer may properly consider its own interests at least equal consideration must be given to the interests of the insured. See Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 668, 250 S.W.2d 785, 790, where the Court said:

> "The insured surrenders to the insurer the right to investigate and compromise or contest claims knowing that, in event of a claim, the insurer will have its own interests to consider. But an insured also has a right to assume that his interests will not be abandoned merely because the insurer faces the prospect of a full loss under

the policy. The relation is one of trust calling for reciprocity of action. The insured owes the duty of full co-operation—the insurer the duty of exercising good faith and diligence in protecting the interest of its insured."

■ Thus, where the claim exceeds policy limits there is always present a possible conflict of interest between the insurer-agent and the insured-principal, and the insurer's conduct is therefore "subject to closer scrutiny than that of the ordinary agent." Tennessee Farmers Mutual Ins. Co. v. Wood, 277 F.2d 21, 35 (CA 6 1960).

■ If in handling a claim an insurer demonstrates an indifference towards the interests of its insured and subordinates the same to its own interests, it may be found to have acted in bad faith. Aycock Hosiery Mills v. Maryland Casualty Co., Southern Fire & Casualty Co. v. Norris, Perry v. United States Fidelity & Guaranty Co., and Tennessee Farmers Mutual Ins. Co. v. Wood, supra.

In the instant case it is clear that Olivette Veasley had been gainfully employed prior to the accident, earning approximately $3500.00 per year; that she could not return to work after the accident; and that she manifested a serious nervous condition.[1]

Evidence was admitted from which the jury could reasonably conclude that appellant's adjuster was in complete control of all settlement negotiations; that he caused Mr. Harkavy to rely on his ability to skillfully investigate and adjust Olivette Veasley's claim; and that Mr. Harkavy was assured that he would be informed of future developments.

---

1. In his initial report to his company, appellant's adjuster stated in part:

    "On July 3rd, 1961, I went to Olivette Veasley's home again and talked with her and attempted to obtain medical authorization from her. I found this colored female in acute distress, and she was so shakey and nervous that she was unable to sign the medical authorizations. However, I did leave the medical authorizations with her, requesting that the next time she went to the physician to have them signed and have him send us a report. I do not think this colored female was trying to impress me or put anything over on us. She seemed very sincere and was extremely nervous, shaking all over, and could hardly talk. She indicated that often her right leg would be numb and she had no control over her hands and for awhile she was unable to feed herself; that somebody else had to give her food."

Evidence was also admitted from which the jury could reasonably conclude that appellant's adjuster led Mr. Harkavy to believe that Olivette Veasley did not have a substantial claim, and that while he gave Mr. Harkavy certain medical reports he was not candid as to his personal observations of Olivette Veasley's nervous condition.

In the latter part of 1961 and early 1962 the appellant was reliably informed that Olivette Veasley was still unable to return to work and that she had been declared totally disabled by her Employers Group Insurance Carrier and the Social Security Administration. A number of medical reports submitted to Olivette Veasley's Group Insurance Carrier, which were turned over to the appellant, indicated that she was suffering from post traumatic neurosis. There was also turned over to the appellant an "Activities Check Report" of the Retail Credit Company indicating that Olivette Veasley manifested a serious nervous condition to its investigator.[2] None of this information was forwarded to Mr. Harkavy.

Towards the end of 1961 Attorney Chiapella informed Mr. Turnage that since Olivette Veasley was in acute financial distress a settlement within the policy limits could be effected. Mr. Turnage rejected the offer. In 1962, without informing Mr. Harkavy, Mr. Turnage endeavored to settle the case first for $2500.00 and subsequently for $3500.00.

In January of 1963 Mr. Turnage formally offered to settle for $5000.00 but, according to the testimony of Chiapella, without disclosing that the offer constituted the policy limits. In this regard Chiapella testified that when Turnage made the $5000.00 offer, but withheld the vital information that it constituted the policy limits, he was thereby led to believe that the limits were in excess of $5000.00 and, therefore, refused the offer. Chiapella also testified that the policy limits were not disclosed at any time prior to the jury's verdict.

There was sufficient evidence from which the jury could reasonably conclude that during the latter part of 1961 and early 1962 the appellant was aware that Olivette Veasley's case was worth substantially more than the policy limits; that it withheld this knowledge and the underlying information from its insured and her counsel, Mr. Harkavy; that for a long period of time appellant took a settlement position based upon an extremely tenuous theory that it might be able to resolve the claim for something less than the policy limits; and that although it knew of Olivette Veasley's willingness to settle for the policy limits, it failed to indicate that the final offer in the amount of $5000.00 constituted its limit of liability.[3]

■ On the evidence disclosed above and a careful review of the entire record, we conclude that there was sufficient evidence from which the jury could reasonably find that, in failing to settle Olivette Veasley's claim, the appellant demonstrated an indifference to the interests of the appellee; that it subordinated the same to its own interests; and that it acted in bad faith. Therefore, the District Judge did not err in denying the motion for a directed verdict.

2. In the report, the Retail Credit Company's investigator stated:
"* * * I found the claimant lying on a couch and was in constant jerking motion over the upper part of her body, her arms and hands not so serious, though it appeared as though she would jerk her head off her neck. It appeared to be uncontrollable. I was unable to get much out of her for she stuttered continually during the interview and finally I gave up and talked with her sister. * * * I interviewed this claimant on 7–21–61 and have talked with her since that date, the latter part of last year using her as an informant in the neighborhood and she had the same symptoms both times but they appeared to be more severe this date (5–2–62)."

3. We do not hold that an insurer has a general duty to disclose policy limits to a claimant. However, on the record before us, the withholding of this information was a circumstance which the jury could consider on the question of bad faith.

The appellant also assigns as error the District Judge's refusal to give certain requested instructions. The charge to the jury fairly and correctly related the applicable principles of law underlying the appellant's requested instructions. Accordingly, the refusal to give appellant's requested instructions in the exact form submitted did not constitute error.

The appellant further assigns as error the overruling of objections to certain questions of law put to the attorney witnesses Harkavy and Chiapella. No prejudice resulted from these questions. The assignment is without merit.

The judgment of the District Court is affirmed.