## H. G. HILL COMPANY *v.* GEORGIA CASUALTY COMPANY.*

### (*Nashville.* December Term, 1928.)

Opinion filed December 22, 1928.

---

*Corpus Juris-Cyc References: Liability Insurance, 36CJ, section 66, p. 1090, n. 62; section 90, p. 1106, n. 2; section 98, p. 1109, n. 65.

EDWIN A. PRICE, EDWIN A. PRICE, JR., and THOS. W. SCHLATER, JR., for Hill Co., appellee.

J. E. TRAVIS and W. C. CHERRY, for Georgia Casualty Co., appellant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

*(1)* This is a suit on an accident policy, which was defended on the ground that immediate notice of the accident was not given, as required by the terms of the policy. The Chancellor and the Court of Appeals concurred in finding that notice was given as soon as complainant learned of the accident, and that the defendant, by its conduct, waived the provision as to notice.

Complainant operates many trucks and automobiles in its business, and at the time of the accident, and for several years prior thereto, carried indemnity insurance in the defendant, Company. These trucks were operated by negro drivers.

On October 14, 1922, one of these trucks, in backing out of a garage on Lea Avenue, in Nashville, struck Miss Warren. The negro driver, Tom Covington, did not know that he struck Miss Warren. Miss Warren, without complaint, went to a nearby drug store, but returned shortly and advised Covington that he had struck her. Covington believing her injury to be trifling, if she were injured at all, did not report the accident to the Company, as he had been instructed to do, and the Company knew nothing about the injury until November 11th,

when it was sued. On that date it gave notice to G. M. Hunt & Company, the local agent of the defendant. This policy had been written by the Hunt Company. On that date Mr. Thweatt, of the Hill Company, and Mr. Wall, adjuster for the Hunt Company, proceeded to make investigations. After much effort, and by communicating with Miss Warren, they ascertained the time and place of the alleged injury and the name of the truck driver. After discussing the matter with Covington, they (Thweatt and Wall) filled out an accident report on one of the printed forms furnished by defendant, Company. The notice was sent to Mr. Travis, general counsel for defendant, in care of Sykes & Company, its general agents. This was the customary practice, followed in some thirty-five or forty cases previously.

On March 22, 1923, Mr. Travis addressed a letter to counsel for Hill Company, raising the question of notice for the first time, and asking Hill Company to sign a stipulation reserving to the defendant, Company, the right to deny all liability under the terms of the policy. This request was denied.

After this the defendant, Company, continued to interview witnesses of complainant, and requested that Tom Covington and other witnesses, be sent to the office of Mr. Travis for examination. Subsequently Mr. Travis obtained an affidavit from Covington, in which it was stated that affiant had not been instructed by complainant, Hill Company, to report accidents. On the strength of this affidavit, Mr. Travis, for defendant, Company, wrote counsel for complainant on May 21, 1923, formally denying liability under their policy, and withdrawing from the suit.

Prior to March 22, 1923, no suggestion of the insufficiency of the notice had been made to complainant. Prior thereto the defendant had practically taken charge of the suit; interviewed numerous witnesses; had complainant's witnesses sent to the office of its attorney for examination; had doctors to examine Miss Warren; had complainant to furnish it a copy of Miss Warren's declaration; consulted with the attorneys for complainant with respect to preparing proper defenses, and promised to file proper pleas to the declaration. In its letter of May 21, 1923, it announced a withdrawal from the suit, which was an admission that it had theretofore been connected with the suit. Under these facts the authorities generally hold that a waiver will be presumed.

Counsel in their brief state that had immediate notice been given them they could probably have settled the cause for a small sum.

It appears that the injury which Miss Warren received was progressive in its nature. By the same reasoning it would appear that, had the Company immediately denied liability for want of sufficient notice instead of cooperating with complainant, leading it to believe that it was handling the suit, and waiting six months to deny liability, the complainant could have settled for a much smaller sum than $5000, which the jury awarded Miss Warren.

It is quite evident that the defendant intended to treat the notice as sufficient, because it is stated by its counsel that its withdrawal was based upon the affidavit of Covington, to the effect that he had not been instructed by the complainant to report accidents, a statement which Covington later repudiated, and which is contradicted by much evidence.

We are of the opinion that the sufficiency of the notice was waived.

*(2)* With regard to the question of notice to the truck driver being notice to the complainant, the following excerpt from the opinion of the Chancellor, and approved by the Court of Appeals, seems to be well supported by the authorities:

"Knowledge of the truck drivers is not imputable to the complainant. They were servants concerned only with the transportation of complainant's goods and wares, and were not its agents for the purpose of giving notice to the defendant. The fact that they were instructed to report all character of accidents to complainant did not make them agents of complainant so that knowledge on their part of the accident would be imputable to complainant; but the giving of such instructions was the exercise of reasonable and ordinary diligence on the part of the complainant to secure information which would lead to the knowledge of the occurrence of accidents, so that it could immediately report same to the insurer. The failure to give such instructions on the part of complainant to its truck drivers would have been negligence because not the conduct of ordinarily prudent men similarly situated. If every menial servant of a corporation is its agent, so that knowledge of an accident on his part is imputable to his employer, corporate organization would be jeopardized, if not wrecked."

The present cause is distinguishable from that of *Phoenix Cotton Oil Co.* v. *Royal Indemnity Co.*, 140 Tenn., 438. In that case the manager and highest official of the mill where the employee was injured had actual knowledge of the injury and did not report it. Immediately

upon receiving notice the insurer denied liability. It was held that the mere fact that an attorney for the insurer subsequently visited the plant and made an investigation did not amount to a waiver. Counsel for defendant fail to distinguish a servant from an agent.

In *Kennedy* v. *Union Charcoal & Chem. Co.,* 156 Tenn., 668, it is said:

"The difference between an agent and a servant is fully discussed in 2 Corpus Juris, 423. In a note at the bottom of the page it is said:

" 'Agency, properly speaking, relates to commercial or business transactions, while service has reference to actions upon or concerning things. Service deals with matters of manual or mechanical execution. An agent is the more direct representative of the master, and clothed with higher powers and broader discretion than a servant. Meacham, Agency, sections 1, 2. The terms 'agent' and 'servant' are so frequently used interchangeably in the adjudication that the reader is apt to conclude they mean the same thing. We think, however, that the history of the law bearing on this subject shows that there is a difference between them. Agency, in its legal sense, always imports commercial dealings between two parties by and through the medium of another. An agent negotiates or treats with third parties in commercial matters for another. *Kingan* v. *Silvers,* 13 Ind. A., 80, 37 N. E., 413, 416.' "

Counsel for both parties rely upon *Woolverton* v. *Fidelity & C. Co.* (N. Y. Ct. of Apps.), 16 L. R. A. (N. S.), 400. In that case the insurer, upon being given notice of the accident, promptly denied liability for want of timely notice. The insured was mulched in damages and instituted that suit to recover from the insurer the sums

it had been forced to pay on account of the accident. Hannan was driving the truck of the insured that caused the injury. The court, in its opinion, said: ·

"In the printed rule on this subject, which the plaintiff posted in its stables, the drivers were directed to make report of accidents to the stable foreman, not to anyone having charge of the insurance business of the company.

"While we thus hold that the plaintiff was chargeable for the delay and neglect of its agents or servants in failing to apprise it of an accident, the occurrence of which they had acquired knowledge or information, this principle must be confined to those agents whose duty it was, either by express regulation of the plaintiff, or by their supervision and control in the natural and proper conduct of business over the subordinate servants by whom the accident had been caused, to transmit such knowledge to their superiors or the company, on which question the notice posted in plaintiff's stables was not conclusive. The courts below have properly held that the knowledge of Hannan, the driver, was not imputable to the plaintiff. The accidents against which the insurance was obtained would in most cases be occasioned by the faults of the company's servants. Considering the natural tendency of a man to conceal or excuse his own fault, it would be unreasonable to expect that in every instance he should report an accident, or, if he did, report it so dispassionately that the master would be aware · of the real danger or liability in which he might stand. Nor should the master be charged with the knowledge or information of a co-servant of the same grade or rank as the one causing the accident. The case of Sparks is different. He was the freight agent at the pier of the

North river. There is a great conflict in the testimony as to his duties and the extent of his supervision and control over the drivers of the trucks. The drivers reported to him every morning, and received instructions from him what goods or packages to carry, and to what places to carry them. It is contended by the respondent that this was the sole extent of his control over the drivers and his duty towards them. On the other hand, there was testimony to the effect that, in the ordinary course of business, it was the duty and practice of Hannan and the other drivers to report any accident to Sparks. It is not necessary to dilate on the testimony. It is sufficient to say there was some evidence in the case which would authorize a jury to find that in the ordinary and natural conduct of the business it was the duty of Sparks to receive reports of accidents and transmit them to the general superintendent. If this were the case, then the plaintiff was chargeable with the delay of Sparks.''

In the instant cause the truck drivers were instructed to report accidents to Parkerson and Thweatt, who were the agents of complainant, to obtain information as to accidents. Had Parkerson or Thweatt received information as to this accident, and had not communicated same to their principal, then the rule announced in the New York case would apply.

In *Shafer* v. *U. S. Casualty Co.* (Wash.), 156 Pac., 861, the employee was instructed to report accidents, and following *Woolverton* v. *Fidelity & C. Co., supra,* the court held that knowledge of the accident by such employee was not imputable to his master.

In both of those opinions *Mandell* v. *Fidelity & C. Co.,* 170 Mass., 173, was approved. In this latter case the court said:

"The plaintiff was not chargeable with knowledge of the accident because his servants had such knowledge. Neither his drivers, stablemen, nor foreman, were his agents for the purpose of giving notice to the company. They were concerned only with the transportation of merchandise and its incidents, and none of them were authorized or were expected by either party to the policy to do anything as his representatives with the defendant. There was no general agency conferred upon any of the employees. The plaintiff and defendant under such circumstances must be deemed to have intended that the notices would be given upon the knowledge or information of the plaintiff himself."

There are other cases to the same effect.

Counsel for defendant insist that failure to instruct drivers to report all accidents is such negligence as will bar a recovery; and further insist that such instruction constitutes the driver the agent of complainant. In other words, that complainant has to constitute every menial employee its agent. Such is not the law.

Complainant was also decreed a recovery of $1450, including an attorney's fee of $1000, in defending the Warren suit.

Defendant insists that it would have defended the suit much cheaper, especially as to the attorney's fee, since it has its attorney employed upon a salary, and that, had complainant signed the stipulation tendered, a large portion of this fee would not have been incurred.

Complainant was under no obligation to sign said stipulation. *Insurance Company* v. *Norment,* 91 Tenn., 1.

(3) When defendant violated its contract, complainant had the right to choose its own attorney. Under all of the authorities in a cause of this character complain-

ant is entitled to recover expenses incurred in defending the damage suit which the defendant was under contract to defend at its expense. 36 C. J., pp. 1090-1092; 14 R. C. L., 1324; *Mandell* v. *Fidelity & C. Co., supra; Brick Co.* v. *Surety Co.,* 126 Tenn., 402.

Writ denied.