**H. T. KERN, Trustee in Bankruptcy for Jim Clayton Motors, Inc., and Ellen O'Hara**

v.

**TRANSIT CASUALTY COMPANY.**

**Civ. A. No. 4456.**

United States District Court
E. D. Tennessee, N. D.
July 20, 1962.

⚷146(3)

———◆———

Paul E. Parker, Paul T. Gillenwater, Green, Webb, & McCampbell, Knoxville, Tenn., for plaintiffs.

Thomas W. Thomson, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

On or about April 23, 1962, James M. Haynes, Judge of the Third Circuit Court for Knox County, Tennessee, entered judgments awarding damages to Ellen O'Hara and John Grady O'Hara, Jr., in the respective amounts of $14,000.00 and $3,200.00, against Jim Clayton Motors, Inc. (hereinafter called Clayton) and H. T. Kern, Trustee in Bankruptcy for Clayton, for injuries sustained in an accident resulting from alleged defective brakes on a used Mercedes automobile sold by Clayton to O'Hara, and repaired by Clayton on the day of the accident.

The suit here is by the plaintiff below, Ellen O'Hara, and by H. T. Kern, Trustee in Bankruptcy, on those judgments against Transit Casualty Company (hereinafter called Transit), Clayton's insurance carrier. The parties sued in addition for interest, costs, expenses, attorneys' fees and penalties. The defendant Transit issued to Clayton Garage Liability Policy No. GL2 54 03 effective January 1, 1960 to January 1, 1961, which said policy, it is alleged, was in full force and effect during the month of March, 1960 when the accident occurred. It is alleged that when the O'Hara suits were filed against Clayton

in March, 1961 Transit was tendered defense of the litigation but that it refused on the ground that liability to the O'Haras was not covered by the provisions of the policy.

Very briefly, the facts are these. Garage Liability Policy No. GL2 54 03 insured Clayton for $25,000.00 for bodily injury to one person and for $50,000.00 for injuries relating to one accident. The following provisions are deemed pertinent:

"*Coverage A—Bodily Injury Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

"*Coverage B—Property Damage Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

## "DEFINITION OF HAZARDS

"*Division 1 – Premises – Operations – Automobiles. The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop,* service station, storage garage or public parking place, *and all operations necessary or incidental thereto;* and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations

for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person.

"*Division 2 – Premises – Operations – Automobiles Not Owned or Hired. The ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured,* a partner therein or a member of the household of any such person.

\* \* \* \* \* \*

"*Defense, Settlement, Supplementary Payments.* With respect to such insurance as is afforded by this policy under coverages A, B and D, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

\* \* \* \* \* \*

"(2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon." (Emphasis added.)

On March 29, 1960, John Grady O'Hara, Jr. and wife, Ellen O'Hara, purchased from Clayton a used 1952 Mercedes automobile. The said John Grady O'Hara, Jr., discovered that the brakes on said automobile were defective and returned it to Clayton for repairs. The automobile remained in the Clayton garage for a time and was thereafter re-

turned to O'Hara with the representation that the brakes were in serviceable condition. O'Hara then attempted to drive said automobile to Lenoir City, Tennessee on U. S. Highway 11 with plaintiff, Ellen O'Hara, riding in said vehicle. When the brakes were applied to the automobile, the right front wheel locked throwing the vehicle into a concrete abutment causing the injuries for which the judgments were obtained in the State Court.

Suit was brought against Clayton for damages. Before the judgments were entered, Clayton became bankrupt and the suits were revived in the name of H. T. Kern, Trustee in Bankruptcy.

Defendant Transit denies in this case that the policy of insurance covers this accident and, relying upon Exclusion (a), asserts that any warranty would have to be in writing. Exclusions (a) and (f) read as follows:

"This policy does not apply:

"(a) under coverages A, B and D, to liability assumed by the insured under any contract or agreement except, under coverages A and B, (1) if in writing, any lease of premises agreement or (2) a warranty of goods or products.

\* \* \* \* \* \*

"(f) under coverage B, to injury to or destruction of

"(1) property owned by or rented to the insured, or

"(2) except under division 3 of the Definition of Hazards, property in charge of or transported by the insured, or

"(3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

The basic legal issue is whether there is policy coverage under the facts of this case. A secondary issue, one of fact we think, is whether, if there be coverage, plaintiffs have met the burden of proof resting upon them of showing that Tran-

sit's refusal to pay the loss was not in good faith, thus rendering it liable for a statutory penalty (56 T.C.A. § 1105). And if there is liability under the policy, we reach the question of the amount of attorneys' fees due Chambers & Gillenwater for defending the suit on behalf of Clayton and the bankrupt estate in the State Court.

The obligation of an insurance company to defend is determined when the action is brought and not by the outcome of the action. Where the obligation assumed, as here, is to defend a suit against the insured, the insurer is liable for refusal to defend an action in which the complaint shows a claim for damages covered by the policy. London Guarantee & Accident Co. v. Shafer, 35 F.Supp. 647 (D.C.Ohio). See also 1st National Bank, Bristol v. South Carolina Insurance Co., 207 Tenn. 520, 523, 341 S.W.2d 569, where the court said an insurance carrier was to look to the contents of its policy and the averments of the declaration in determining its obligation. It is clear also that an insurer is concluded by a judgment rendered in respect to issues in prior litigation to which insured was a party and which issues were identical to those in subsequent litigation. Clinchfield Railroad Company v. United States Fidelity & Guaranty Co., 160 F.Supp. 337, 343, (D.C.Tenn.) In other words, the parties may not retry issues which were tried and resolved by judge or jury in the first case. We may try here only issues which were not presented for decision in the first case.

At the hearing, Transit did not contest the amount of the judgments below. Its chief reliance was upon the language of Exclusion (a) which it argued excluded any liability resulting from a breach of warranty unless said warranty were in writing. This contention presents a question of construction to the Court and is a matter which was not decided below.

It is almost axiomatic that exclusion clauses must be strictly construed. American Indemnity Company

v. Sears, Roebuck & Company, 195 F.2d 353 (C.A. 6). In that case, the Court said at page 355:

" * * * Under familiar rules of interpretation, exclusion clause must be strictly construed. It is a long established rule of construction that provisions of a contract, if uncertain, must be construed more strictly against one who draws it, and also a long established rule, that one claiming to be excepted from general liability must bring himself clearly within the exception. * * *"

It is also true that ambiguities in the language used by an insurer in an indemnity insurance policy will be construed most favorably to the insured. Pennsylvania Railroad Company v. Travelers Insurance Co., 226 F.2d 520, 523 (C.A. 6), Clinchfield Railroad Company v. United States Fidelity & Guaranty Co., supra.

Coming to grips now with the language of Exclusion (a), we observe that the language could lend itself to different interpretations. The defendant contended that the words, "if in writing," must be read with both a lease agreement and with a warranty. The argument runs that if they did not apply to a warranty also there would have been a break in the sentence in the form of a comma or semi-colon, after the word "agreement" and that in the absence of such, the construction follows that a warranty must be in writing.

The plaintiffs argued on the other hand that since the words, "if in writing," occurred within clause (1) relating to leases, it perforce is unrelated to clause (2) relating to warranties. To have the meaning ascribed by defendant, plaintiffs assert that the words, "if in writing," would have to be inserted after the clause, "under coverages A and B," and before the numeral "(1)".

■ The Court freely recognizes the plausibility of both viewpoints, but the very recognition, that two constructions are reasonable, injects a fatal weakness into defendant's contention. For where, in language used by the insurer two constructions are reasonable, the language weighted with two possible meanings is ambiguous and must be resolved against the defendant. Pennsylvania Railroad Co. v. Travelers Insurance Co., supra. We hold that the representation, whether express or implied, that the brakes were in serviceable condition need not have been in writing.

■ There was some discussion under Exclusion (f) (3) that the policy did not cover property damage arising out of destruction of work completed, and did not cover because the property was not on the premises. This argument, although made, was not pressed. About this we have no reservations. When coverages A (for bodily injury) and B (for property damage) are read in connection with the hazards covered, namely operation of the premises for purposes of a sales agency and repair shop and all operations necessary or incidental thereto, we think the policy clearly covers damages arising from the use of a defective automobile sold by the sales agency and used off the premises, or serviced in its repair shop and used off the premises.

We think there is clearly liability for the damages allowed in the State Court and for costs incidental to that action. Flies v. Fox Brothers Buick Co., 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357; annotated in 60 A.L.R. 371; see also 99 A.L.R. 240; Frumer and Friedman Products Liability, Sec. 18.03(3).

■ Defendant refused to defend on the mistaken premise that there was no coverage. It cannot thereby escape liability. This liability is clearly set forth in an annotation appearing in 49 A.L.R. 2d 701 and 702:

" * * * Such a refusal, even though based on an honest mistake of the insurer, constitutes an unjustified refusal and renders the insurer liable for breach of its contract. Thus, all the cases agree that where it is the insurer's duty to defend and the insurer wrongfully

refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract rendering it liable for all damages resulting to the insured as a result of such breach. * * * "

This annotation went on to state that where an insurer wrongfully refuses to defend an action it becomes obligated to pay the amount of the judgment rendered against the insured together with all the expenses to which the insured was put in making the defense itself including court costs, attorney fees and other reasonable expenses. This is sound law. See St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712; Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 214 F.2d 418, 419, 422 (C.A. 8); Hill Company v. Georgia Casualty Co., 158 Tenn. 194, 202–203, 11 S.W.2d 684.

We come now to the allowance of attorneys' fees. Clayton was initially defended by Chambers & Gillenwater, which firm by agreement with the Trustee continued the defense after the bankruptcy. The firm is now dissolved, but by agreement incident to the dissolution, all fees connected with this suit are payable to Mr. Gillenwater. Mr. Gillenwater listed in detail his activities and charges and those of Mr. Chambers, which included six man-days in Court, and asked a fee, including expenses advanced of $159.50, in the amount of $2,912.00. An attorney of long standing was put on the witness stand and placed a value of $2,659.00 upon the services and advances. The Court feels that the request is within a reasonable range and allows a fee of $2,500.00 to Mr. Gillenwater in addition to the expenses advanced by him to the amount of $159.50.

Mr. McCampbell, who represented the Trustee in this Court, asked for attorneys' fees of $800.00, which amount seems reasonable for the services rendered. But Mr. McCampbell in bringing this suit and appearing here performed no duty for which Transit had obligated itself. Those services were performed in the State Court by Mr. Gillenwater's firm. Mr. McCampbell's services were rendered to the bankrupt estate of Clayton in shifting the obligation of the judgments from the estate of Clayton to the insurance company. This Court is aware of no basis for allowing Mr. McCampbell's fees against Transit in the absence of contract, statute or some recognized ground of equity. Carter v. Virginia Surety Co., 187 Tenn. 595, 604–605, 216 S.W.2d 324; Gillespie v. Federal Compress & Warehouse Co., 37 Tenn.App. 476, 499–500, 265 S.W.2d 21; Milwaukee Mechanics Ins. Co. v. Davis, 198 F.2d 441 (C.A. 5); Guardian Trust Co. v. Kansas City Southern Ry. Co., 28 F.2d 233 (C.A. 8); Sprague v. Ticonic Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184.

We have excluded the possibility of recovery under contract. This is not an equitable action, no fund is in the Court and no sound reasons for an allowance in equity are advanced. It is true that 56 T.C.A. § 1105 allows a recovery of a penalty against an insurance company where it is " * * * made to appear to the court * * * trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy; * * *." See New Amsterdam Casualty Co. v. Shields, 155 F. 54 (C.A. 6). But we find no lack of good faith here. Although disagreeing with defendant's construction, in our opinion there were sound grounds for disagreement as to the meaning of Exclusion (a). In any event, Mr. McCampbell will have recourse to the Bankruptcy Court for fees for his services to the estate.

Plaintiffs are entitled to the amount of the State Court judgments and costs incident thereto, including the fees and expenses of Chambers & Gillenwater as allowed above.