Martin **LANDIE** and Sol Landie,
Respondents,

v.

**CENTURY INDEMNITY COMPANY,**
a corporation, Appellant.

No. 24149.

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Motion for Rehearing and for Transfer to
Supreme Court Denied June 7, 1965.

Application for Transfer Denied
July 12, 1965.

Roy A. Larson, Jr., Kansas City, Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel, for appellant.

Jack N. Bohm, Kansas City, for respondents.

HOWARD, Judge.

In this case respondents, plaintiffs below, seek to recover from appellant, defendant below, that part of a judgment which is in excess of the limits of an automobile liability insurance policy issued by appellant. We shall refer to the parties as they appeared below. Since the procedures had in previous litigation vitally affect the issues in the present case, we will list such previous proceedings in chronological order.

One C. F. Dawkins was engaged in the business of selling used buses, trucks and parts in Wolcott, Kansas, and was the insured under an automobile liability policy issued by the defendant in the present case, Century Indemnity Company.

About the middle of November, 1954, Dawkins loaned an old truck-tractor to Martin Landie, who with his brother, Sol Landie, was engaged in the junk business and in the business of buying and moving old houses. The two Landies are the plaintiffs in the present case. The Landies put a fifth wheel on the borrowed truck-tractor and attached a trailer thereto, and proceeded to move a house with such rig.

While so moving the house on a public highway in Jackson County, Missouri, on November 27, 1954, one Chester Redman collided therewith and received serious personal injuries.

On November 29, 1954, Redman filed suit against both Landies. The Landies were insured under a liability insurance policy issued by the Central Standard Insurance Company of Sioux Falls, South Dakota, and such company assumed the defense of this damage suit on behalf of the Landies.

In April, 1955, C. F. Dawkins (who owned the truck-tractor involved in the accident and who was insured by the Century Indemnity Company) was made a party defendant in the Redman suit. Century Indemnity Company defended Dawkins in the Redman suit.

About October of 1955, the Central Standard Insurance Company went bankrupt and ceased to represent the Landies, who then, through their private attorney, made an oral demand upon the Century Indemnity Company to assume their defense. This oral demand was refused. Thereafter, on March 10, 1956, written demand was, for the first time, made upon Century Indemnity Company to defend the Redman case on behalf of the Landies, which demand was refused. This demand was made on the theory that they were operating the truck-

tractor owned by Dawkins with his permission, and were therefore covered by the policy issued to Dawkins by Century Indemnity Company as an additional insured.

On May 9, 1956, Redman dismissed his lawsuit against Dawkins.

On November 6, 1956, the Landies through their private attorney, wrote another letter to Century Indemnity Company again demanding that the company defend the Redman case on their behalf, and also advising that such case could be settled for $15,000.00 (this was the limit of the policy issued by Century Indemnity Company to Dawkins), and demanding that the company settle this lawsuit for this amount.

By letter of November 15, 1956, Century Indemnity advised the Landies that there was no coverage for them under the policy and that they would not defend the Redman suit, on behalf of the Landies, except under a full reservation of rights.

The Landies refused to enter into an agreement for the reservation of rights and Century Indemnity did not defend the Redman suit in their behalf.

On November 21, 1956, an agreement was reached by Redman and the Landies whereby it was agreed that, regardless of any judgment recovered by Redman against the Landies, the Landies would be required to pay only $7,500.00, and that Redman would not attempt to collect more from them but would be limited to attempting to collect from any insurance which might be available in the case.

Thereafter, and on the same day, November 21, 1956, judgment was entered in the Circuit Court of Jackson County, Missouri, for the plaintiff Redman and against the defendant Landies in the amount of $22,500.00. This represented the $15,000.00 limit of the insurance policy issued by Century Indemnity plus the $7,500.00 that the Landies had agreed to pay.

The Landies then paid the sum of $7,500.00 to Redman as per their agreement.

Century Indemnity did not make any payment and thereafter Redman instituted garnishment proceedings against the company to collect his judgment against the Landies. After trial to the court judgment was rendered for the plaintiff Redman April 28, 1960, in the amount of $15,000.00. In this proceeding the court found that the insurance policy issued by the Century Indemnity Company to Dawkins did, in fact, cover the operation of the vehicle by the Landies. This judgment has now become final and Century Indemnity has paid the $15,000.00 and costs, plus interest.

On May 15, 1961, the Landies filed the present suit against the Century Indemnity Company seeking to recover from the insurance company the $7,500.00 which they had paid to Redman under the agreement referred to above. This $7,500.00 payment was over and above the limits of the policy issued by the company. Plaintiffs in this suit also seek to recover their attorney fees and expenses incurred in defending the original Redman suit.

After trial to a jury in the Circuit Court of Jackson County, Missouri, a verdict was returned on April 21, 1964, awarding judgment to the plaintiffs Landies in the amount of $8,365.00, being the $7,500.00 excess of the Redman judgment, plus $865.00 attorney fees and expenses.

It appears that at the trial the company conceded and the parties agreed that because the company had failed to defend the Landies when the policy did in fact cover them, the company was liable to the Landies for attorney fees and expenses in defending the Redman suit. This amount was agreed to be $865.00.

We thus have a factual situation wherein the insurance company has failed and refused to defend an insured and while persisting in such refusal to defend, has refused to settle the suit against its insureds within the limits of the policy, although such settlement was demanded by the insured.

It appears to be the position of the defendant insurance company that it had reasonable grounds to believe, and in good faith did believe, that the Landies did not have permission from Dawkins to operate the borrowed truck-tractor on the public highways in moving a house and consequently there was no coverage under the policy, and that, because they acted in good faith in contending that there was no coverage they are not liable for any judgment against their insured in excess of the policy limits.

It appears to be the contention of the plaintiffs Landies that they were covered by the policy (and this fact has been finally and conclusively settled by the final judgment in the garnishment proceedings) and that the company was thereby obligated to defend them, and in such defense was obligated to use good faith in considering offers of settlement. Since the company failed to defend it is liable for the judgment against plaintiffs to the limits of their policy (which has now been paid) plus their attorney fees and expenses in defending the Redman suit (which the company now admits). Plaintiffs further contend that the company was not in good faith, but in fact acted in bad faith, when they refused to settle the Redman suit within the limits of the policy pursuant to the notification and demand contained in their letter of November 6, 1956, and that, because the company acted in bad faith in refusing to settle within the policy limits it is liable to them for the amount of the Redman judgment in excess of the policy limits.

In the argument counsel advised that they were unable to find any Missouri case involving the double-barrelled proposition of refusal to defend and refusal to settle. Considerable research by the writer has likewise failed to reveal any such Missouri case. In fact, only a small handful of cases in any way involving this factual situation have been found in the United States.

■ The policy in question obligated the company to defend any suit against the insured claiming damages because of injury

arising out of the ownership, maintenance or use of any automobile, even if such suit is groundless, false or fraudulent and the company reserved to itself the exclusive right to make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

This is a standard policy provision and under this or essentially similar provisions it has been universally held that the company is contractually obligated to defend anyone who in fact comes within the policy definition of "insured"; that failure to so defend is a breach of contract and that reasonable or good faith belief that there is no coverage under the policy is no defense. The company fails to defend at its peril.

■ For such breach of contract the company is liable to its insured to pay any judgment recovered against him up to the limits of the policy plus attorney fees, costs, interest and any other expenses incurred by the insured in conducting the defense of the suit which it was the obligation of the company to perform under its contract. Also, the insured is released from the policy prohibition against incurring expenses and negotiating and settling claims. The company is thus obligated to reimburse the insured for such settlement, absent collusion, etc. See Freese v. St. Paul Mercury Indemnity Co., Mo.App., 252 S.W.2d 653, Bituminous Casualty Corp. v. Walsh & Wells, Inc., Mo.App., 170 S.W.2d 117.

This general rule is concisely set out in the annotation at 49 A.L.R.2d 694, 1. c. 711 where it is said: "Thus, all the cases agree that where it is the insurer's duty to defend, and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages resulting to him as a result of such breach." See the many cases, including Missouri cases, cited in the annotation.

In Pennsylvania Threshermen & Farmers Mutual Casualty Ins. Co., v. Messenger, 181 Md. 295, 29 A.2d 653, the Court of Appeals of Maryland held that such failure to defend where there was in fact coverage constituted a breach of contract for which the company would be held for all damages reasonably flowing from such breach so as to put the insured in as good a position as he would have been in if the company had performed its contract. Here the insured's truck was involved in an accident in a state of which he was not a resident and he was sued by attachment. The company refused to defend and the truck was sold under execution. The court held that the company was liable for the value of the truck so lost by insured in addition to the balance due on the judgment, costs, etc., since such loss naturally flowed from the breach of contract.

Missouri applies the same measure of damages for breach of contract. See such cases as Wright v. Ickenroth, Mo.App., 215 S.W.2d 43, Security Stove & Mfg. Co. v. American Ry. Express, 227 Mo.App. 175, 51 S.W.2d 572 and Hellrung v. Viviano, Mo. App., 7 S.W.2d 288.

■ Thus the universal rule which Missouri follows is that an insurance company is liable to the limits of its policy plus attorney fees, expenses and other damages where it refuses to defend an insured who is in fact covered. This is true even though the company acts in good faith and has reasonable ground to believe there is no coverage under the policy. In the present case, after the judgment in the garnishment proceedings wherein it was conclusively determined that there was coverage under the policy, the defendant insurance company paid the $15,000.00 limit of its policy, plus interest and expenses in that case. In the present case the company agrees that since there was in fact coverage, it is liable for attorney fees, and expenses incurred by the Landies in defending the Redman suit. Thus, the one issue in the present case is whether or not the insurance company is

liable to the Landies for that part of the Redman judgment in excess of the limits of its policy.

The defendant company contends that it acted in good faith and had reasonable grounds to conclude that there was no coverage under the policy and that therefore, even though this conclusion was mistaken and even though there was coverage under the policy, they cannot be held beyond the limits of the policy, and that such good faith in refusing to defend excuses them for failure to settle within the limits of the policy.

The plaintiffs Landies on the other hand contend that since the company was in fact obligated under its policy to defend the Redman suit, they were obligated to consider and act upon the offer of settlement, within the limits of the policy, in good faith; that the company failed to do this, and, in fact, acted in bad faith when it refused to settle within the limits of the policy, and is therefore liable for the full judgment even though it is in excess of the limits of the policy.

■ It is now beyond dispute in Missouri and in most, if not all, of the other jurisdictions in the United States, that where the company does assume the defense of a suit against its insured it may be liable over and above its policy limits if it acts in bad faith, or in some jurisdictions acts negligently, in refusing to settle the claim against its insured within its policy limits when it has a chance to do so. See Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, McCombs v. Fidelity & Casualty Co., 231 Mo.App. 1206, 89 S.W.2d 114, and Maryland Casualty Co. v. Cook-O'Brien Const. Co., CA8, 69 F.2d 462. See also annotation 40 A.L.R.2d 168 and the many cases cited therein. Conversely, where the company in good faith believes there is a valid defense to the claim, even though the defense proves unsuccessful and results in a judgment against the insured above the policy limits, the company is not liable, because of such honest mistake, be-

yond the limits of its policy. See Frank B. Connet Lumber Co. v. New Amsterdam Casualty Co., CA8, 236 F.2d 117.

In Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, the Missouri Supreme Court gave careful consideration to this problem of failure to settle and concluded that where the company acted in bad faith in refusing to settle within the policy limits it was liable in tort to the insured for the entire resulting judgment against the insured, including that part thereof in excess of the policy limits. The court held that such cause of action in the insured was not based on breach of contract and was not based on negligence but was an action in tort for the wrong committed by the company when it failed to act in good faith in determining whether or not to accept the offer to settle the claim against its insured within the limits of its policy.

■ The Supreme Court pointed out that a company acted in bad faith in refusing to settle within its policy limits when it attempted to escape its obligations under the policy by an intentional disregard of the financial interests of the insured; that bad faith was shown when the company attempted to force the insured to contribute money to a settlement within the limits of the policy or where it appeared that the company preferred to gamble on escaping all liability by a favorable verdict rather than accept a reasonable settlement within the policy limits. Bad faith is shown by the failure of the company to act honestly to save the insured harmless as it has contracted to do in its policy. Good faith requires the company to make any settlement within the policy limits that an honest judgment and discretion dictates.

Our problem in the case at bar is how to correlate the two well settled rules discussed above when we have joined in one case the two problems of failure to defend and failure to settle. Aside from the California case which is discussed later in this opinion, we get no help from the very few cases from other jurisdictions on this

precise point. See Pennsylvania Thresher-men & Farmers Mutual Casualty Ins. Co. v. Robertson, D.C., 157 F.Supp. 405, and State Farm Mutual Automobile Ins. Co. v. Skaggs, 10 Cir., 251 F.2d 356.

The only case found which gives careful and full consideration to this exact situation is Comunale v. Traders and General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883, decided by the California Supreme Court in 1958.

In this case Comunale and his wife were injured in a collision with a truck operated by one Sloan who was insured by the Traders and General Insurance Company. The company refused to defend Sloan, claiming that there was no coverage under the policy and Sloan defended himself. During the course of the litigation and before judgment there was an offer to settle within the limits of the policy. Sloan notified the company of this offer and demanded that the company defend and settle but the company refused. The trial resulted in a judgment for the Comunales above the limits of the policy. After further litigation with the company the judgment was satisfied up to the limits of the policy. Comunale then obtained an assignment of all of Sloan's rights against the company and brought this suit.

The court pointed out that under the policy there involved (as is also true in the present case) the company was obligated by its contract to defend suits brought against its insured and stated that where the company refused to defend, when there was in fact coverage, even though the refusal was in good faith, such failure to defend constitutes a breach of contract. The court also pointed out that the company which breached its contract by failure to defend could not thereby be put in a better position than a company which honored its contract and did defend. Thus the court concluded that in either instance the company, when coverage did in fact exist, was obligated to consider and act upon offers of compromise in good faith, and that

failure to act in good faith in refusing to settle within the limits would result in the company being liable for the entire judgment, even though such judgment exceeded the limits of the policy.

The court said: "The decisive facts in fixing the extent of Traders' liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits."

Because of the breach of contract the insured is entitled to be put in as good a position as he would have been in if the company had honored its contract and defended. This result is accomplished where there is no question of refusing to settle by requiring the company to pay the judgment within the limits of its policy, and also to pay for attorneys fees and other expenses incurred by the insured in his defense of the lawsuit where it was the obligation of the insurance company to itself defend the lawsuit, and pay out the money for attorney fees and other costs.

■ Where there is a wrongful refusal to settle within the limits of the policy, the insured is not made whole, i. e., he is not put in the same position as he would have been if the company had performed its contract and defended the suit, by a mere payment of the judgment up to the limits of the policy, plus attorney fees and expenses. Where the company performs its contract and defends the suit, the insured has a right to good faith consideration by the company of settlement offers within the limits of the policy. If the company refuses, in bad faith, to settle within the limits, the insured can recover the full amount of the judgment in excess of the policy limits from the company. Thus it follows that where the company breaches its contract and refuses to defend, the insured can only be put in as good a position as he would have been in had not the contract been breached, if the company is required to give good faith consideration to offers of settlement within the limits of the policy, and the insured is given the right to re-

cover judgment in excess of the policy limit when settlement within these limits is refused in bad faith by the company.

Attorneys for the defendant company contend that this California case should not be followed in Missouri because the theory of recovery for failure to settle is based on breach of contract in California, whereas it is based on tort in Missouri. The difference in theory as thus pointed out is correct, but it is not believed that this effects the persuasive logic of this opinion.

As pointed out in the Comunale case, under California law, there is an implied covenant of good faith and fair dealing between the parties; when the company does not give good faith and fair consideration to an offer of settlement within the limits of the policy, there is a breach of such implied covenant and the insured has a cause of action based on contract against the company to recover the amount he has been damaged by such breach. The measure of damages is the full amount of the judgment against him (plus expenses) even though it may exceed the policy limits.

■ In Missouri, as pointed out in the case of Zumwalt v. Utilities Insurance Company, 360 Mo. 362, 228 S.W.2d 750, recovery for failure to settle in an appropriate case is based on tort committed by the company when it acts in bad faith in refusing to settle. This recovery is not based on negligence and it is not based on contract. It is a non-negligent tort, committed by the company which acts in bad faith to the detriment of the insured. While the fundamental theory of recovery is based on contract in California and on tort in Missouri, it will be seen from a reading of these two cases that the touchstone in each instance is the bad faith of the company in refusing to settle. So, as a practical matter, the criteria which govern the decisions in these cases are actually the same, whether it be under the contract theory of California or the tort theory of Missouri.

The defendant company here contends further that the California case permitted recovery only because of a specific California statute, having to do with damages for breach of contract. From this they conclude that because the Missouri action sounds in tort rather than contract, and because Missouri has no comparable statute, the California case can not be used as authority in Missouri.

A careful reading of the opinion of the California Supreme Court in the Comunale case refutes this argument. The court in that opinion pointed out that there was an implied covenant of good faith and fair dealing which was breached by the company when it refused to settle, in bad faith, and that damages for such breach would include whatever was necessary to place the insured in as good a position as if the company had not breached its contract, including an obligation on the company to pay the entire judgment, even though it exceeded the limits of the policy. The court then considered the specific California statute only to show that the above conclusion was in conformity therewith. It did not rest its conclusions on the provisions of this statute.

■ Since it has now been conclusively determined that there was in fact coverage under the policy in the present case, the defendant company breached such contract by failure to defend. Such breach can not put the company in a better position than if it had properly performed the obligations of its contract. Such breach can not relieve the company of any of its obligations and such breach can not take away from the insured any of his rights. Under such circumstances the insured must be placed in a position which is equally as good as that which he would have occupied if the company had performed its contract.

■ It therefore follows that the company was still obligated to give good faith consideration to the possibility of settlement of this suit within the limits of the policy,

and that if the company refused to accept an offer of settlement within the limits, and if the refusal was the result of bad faith on the part of the company, then the company is liable to the insured, in tort, for the damages resulting from such bad faith and the plaintiffs can recover their damages from the company, which may include that part of the judgment which the insured has paid over and above the limits of the policy.

The defendant Century Indemnity Company alleges error in the failure of the trial court to sustain its motion for directed verdict at the close of all the evidence and in overruling its motion for judgment after verdict. The basis for this allegation of error is that there was no sufficient evidence of bad faith on the part of said defendant to make a case for the jury.

When we remember that the critical question in this case is whether or not the defendant company acted in bad faith in refusing to settle the Redman case within the limits of its policy, we see that, considering the evidence most favorably for the plaintiffs, the jury could find that in this case Redman had received severe and permanent injuries, and that there were reasonable grounds to believe that a likely verdict might range from $30,000.00 to $50,000.00. Redman's attorney, testifying in the present case as an expert, gave such evidence and there is no evidence in the record to the contrary. The jury could also find that the investigation of this matter by the insurance company was limited solely to the question of coverage, which, in this instance, turned on whether or not the Landies were using the borrowed truck-tractor with permission of the owner. The jury could find that the company concluded that there was no coverage and did not investigate the matter further; that there was no inquiry made into the nature or extent of plaintiff's injuries, the facts surrounding the collision and the probable negligence of either or both of the drivers, or any other circumstances of the accident, other than

was revealed by the police report. The jury could further find that in fact the defendant company refused to give *any* consideration to the offer of settlement, within the limits of the policy, but stood on its denial of coverage and failed and refused to consider any of the interests of the Landies, who were, in fact, their insureds. From this fact situation the jury could well have found, as they did, that the company acted in bad faith in refusing to settle.

The defendant company also complains of the giving of instructions 3 and 4 on behalf of plaintiffs. These instructions, together with the other instructions in the case, are not recommended as a model to be followed in the future, but they are not subject to the complaints leveled against them by the defendant company, and therefore no reversible error is found.

The first complaint of the defendant company is that instruction No. 3 submitted the issue of bad faith on the part of the company in refusing to settle the Redman case. The company contends that the issue of bad faith should be determined on its action in refusing to defend rather than in refusing to settle. What has been said heretofore in this opinion disposes of this contention adversely to the claim of the defendant company.

Defendant also contends that this submission of the narrow issue of bad faith in failure to settle constitutes an improper singling out of only one fact issue, and gives undue prominence to such single issue to the prejudice of other equally important fact issues. Since we have pointed out heretofore that the issue of bad faith in refusing to settle is the turning point in the case, this criticism is not valid and such cases as Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102, Banta v. U. P. R. R. Co., 362 Mo. 421, 242 S.W.2d 34, Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d 517 and LaTour v. Pevely Dairy Co., Mo.App., 349 S.W.2d 436 are not controlling.

■ Defendant also complains that this instruction fails to require the jury to find the facts on which its verdict is to be based. This overlooks the holdings of such cases as Breshears v. Union Electric Company of Missouri, Mo., 313 S.W.2d 638, and Lewis v. Terminal Railroad Ass'n. of St. Louis, Mo.App., 61 S.W.2d 234, and the cases therein cited, which hold that where the essential facts are not really in dispute it is not necessary for a verdict directing instruction to affirmatively require the jury to find such facts. The attorney for the defendant company, testifying as a witness in the present case, supplied or corroborated much of the evidence on this point and thereby removed any possibility of dispute.

Defendant's contention also ignores the requirements of Instruction No. 4 given on behalf of plaintiffs which directs the jury to consider certain facts designated therein in reaching their decision as to the existence of bad faith.

As to Instruction No. 4, defendant complains of the use of the words "reasonableness or unreasonableness" of the defendant's actions. It contends that this only refers to the reasonableness of its action in denying coverage, and that since at the time of trial it had been conclusively determined that there was coverage, the jury could only be expected to find against the company. This overlooks the fact that Instruction No. 3 submitted the issue of bad faith on the question of refusing to settle, not on the question of denial of coverage. Since this has been held in the foregoing part of this opinion to be proper, the present complaint of the defendant is without foundation.

Defendant also complains of the use of the words "reasonable" and "unreasonable" by analogy to the action of the Missouri courts in reversing cases wherein burden of proof instructions required the jury to find that proof had been made "to their reasonable satisfaction". These cases are not, in fact, analogous to the situation here

presented and their authority is not persuasive in this case.

■ Again defendant complains that the facts the jury was authorized to consider by Instruction No. 4 concern only the issue of good faith in failing to settle instead of bearing on the company's good faith or bad faith in denying coverage. This is true, but since the issue submitted, and properly so, was the issue of bad faith in failure to settle, this does not make the instruction erroneous.

Defendant here and in other parts of its brief, complains that if the case does not turn upon the issue of good or bad faith in denying coverage, the company will thereby be denied its right to litigate the question of coverage, and must, as a practical matter, admit coverage and defend in all instances. This, of course, can not be a ground for releasing the company from its obligation to exercise good faith in considering offers of settlement within the policy limits, where coverage does in fact exist, and entirely overlooks the adequate remedy the company has in such situations, by seeking declaratory judgment as to any substantial question of coverage that it may, in fact, desire to litigate.

■ Lastly, defendant complains of error by the trial court in failing to include in Instruction No. 7 a form of verdict allowing the jury to specifically and affirmatively find for defendant and against plaintiff on the issue of the $7,500.00 excess of the Redman judgment above the policy limits. Defendant, although admitting with commendable candor that it has not preserved any allegation of error as to Instruction No. 7, insists that this court should consider its allegation as to error in this instruction under Supreme Court Rule 79.04 V.A.M.R. as constituting "plain error".

Instruction No. 7 was given on the court's own motion and is the formal instruction which contains the form of verdict. The first form given advises the jury that if

all their number agree upon the verdict, it should be in the following form:

"We the jury find the issues for the plaintiffs and do assess their damages at—dollars."

The other form was similar except it provided for a verdict by less than twelve jurors. No other form of verdict was supplied to the jury.

The parties had agreed that plaintiffs were entitled, under any circumstance, to a verdict for $865.00 for attorney fees and expenses incurred in defending the Redman suit. Instruction No. 2 so informed the jury. Thus, in any event, the jury would return a verdict for the plaintiffs in some amount. They had a choice of either the agreed $865.00, or a verdict for this amount plus the $7,500.00 excess of the Redman judgment over the policy limit.

Such a form as is contended for by the defendant would constitute an itemization of the judgment, and would be undesirable and of doubtful propriety. In any event, the instruction as given could only militate against the defendant company if it were confusing to the jury, and when it is remembered that Instruction No. 2 explained to the jury that they were to give judgment for the plaintiffs in the amount of $865.00, regardless of what they decided as to the $7,500.00 mentioned in other instructions, and when it is also considered that plaintiffs' verdict directing Instruction No. 3 concerning the $7,500.00 claim, advised the jury that if they found for the plaintiffs on this matter they should return a verdict for such amount of $7,500.00 "in addition to the amount mentioned in Instruction No. 2", it appears that no reasonable jury should be confused. We also take note of the fact that Instructions No. 5 and 6, given at the request of defendant, clearly indicate that they apply only to the issue involving the $7,500.00 excess judgment over the policy limits.

Under these circumstances we are not convinced that the defendant was prejudiced by Instruction No. 7 and conclude that this is not a case wherein this court should exercise its discretion under Rule 79.04.

The judgment below is accordingly affirmed.

All concur.