NATIONAL SERVICE FIRE INSURANCE
COMPANY v. MR. and MRS. HOOPER
WILLIAMS et al.—454 S.W.2d 362

Eastern Section. August 5, 1969.

Certiorari Denied by Supreme Court February 16, 1970.

Donaldson, Montgomery & Kennerly, Knoxville, for appellant.

Ogle & Ogle, Wynn & Wynn, Sevierville, for appellees.

COOPER, J. The defendant National Service Fire Insurance Company has appealed from a judgment entered in the Circuit Court of Sevier County awarding plaintiffs a recovery of $35,978.63 under an automobile liability insurance policy issued by the defendant to Mayford B. Ogle. The principal issues in the trial court, as reflected by the pleadings of the parties, were (1) whether or not Bobby Proffitt was an additional insured under the terms of the policy while operating Mayford Ogle's automobile on November 24, 1965, and (2) if so, whether or not the defendant insurance company acted in bed faith in failing to defend the estate of Bobby Proffitt in a wrongful death action arising out of his operation of the Ogle automobile and/or in failing to settle the wrongful death action within the policy limits.

The trial judge, sitting without the intervention of a jury found ''there is proof in the record and the Court finds it to be true that Mayford B. Ogle had instructed his daughter, Lois, to permit Bobby Proffitt to use the car, [and that Bobby Proffitt's] use of the automobile was so open and notorious that reason would convince us that he [Mayford Ogle] knew that Bobby Proffitt was driving the car from time to time.''

The trial judge further found ''that the insurance company acted in bad faith in refusing to defend plaintiffs and in refusing to consider or make settlement.''

On appeal, the defendant insurance company insists, in substance, that the evidence preponderates against the trial judge's findings of fact.

For background, it is undisputed that shortly after purchasing a new 1965 Chevrolet Impala automobile, Mayford B. Ogle secured an automobile liability insurance policy from the defendant insurance company with bodily injury liability limits of "Ten thousand dollars each person" and "Twenty thousand dollars each accident." The term "insured" was defined in the policy as including "the named insured [in this case Mayford B. Ogle] and * * * his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

Mayford Ogle, who earns his living as an over-the-road tractor driver, left the automobile at his home for the use of his family including his married children who were not residents of his household. In fact, there is every indication in the record that the automobile was purchased principally for the use of a married daughter, Lois Blalock. In any event, Lois Blalock used the automobile extensively and often kept it at her home.

On the morning of November 24th, 1965, Mrs. Blalock gave permission to Bobby Proffitt to use the automobile to go after his salary check, and to have a tire repaired. It was the intention of Mrs. Blalock that Bobby Proffitt drive her and Bobby's mother to Spring City, Tennessee, on the afternoon of the 24th, so that the two ladies could spend the Thanksgiving holidays with their husbands who were working together on a construction site near Spring City.

Bobby Proffitt, while driving on Chapman Highway near Sevierville, Tennessee, lost control of the automobile

and it struck a bridge abutment. Both Bobbie Proffitt and Irene Williams, a passenger, were killed.

A wrongful death action was filed in behalf of the heirs of Irene Williams against the Estate of Bobby Proffitt and against Mayford B. Ogle, as the owner of the death automobile.

On investigation and after having been informed by both Mayford Ogle and Lois Blalock that Bobby Proffitt did not have permission of Mayford Ogle to drive the Ogle automobile, the defendant insurance company declined to aid in the defense of the claim against the Estate of Bobby Proffitt, and limited their efforts to the defense of the suit against Mayford Ogle. Mrs. Mary Proffitt, as administratrix of her son's estate, employed other counsel to represent the estate in the wrongful death action.

A written offer to settle the claim of the heirs of Miss Williams within the policy limits, dated January 17, 1967, was transmitted to counsel for Mr. Ogle.

On January 18, 1967, the heirs of Miss Williams voluntarily dismissed their suit against Mayford Ogle, but prosecuted the suit against the Estate of Bobby Proffitt to judgment and were awarded damages in the amount of $39,978.63.

The heirs of Miss Williams and the administratrix of the estate of Bobby Proffitt then joined together to bring the present suit with the result set out above.

On the material issue of permission, in construing policy provisions similar to the one set out above, the appellate courts of this state have held that ''the provision 'Provided the actual use of the automobile is with the permission of a named insured' means the use to

which the vehicle is being put at the time of the accident with the permission of the named insured." Messer v. American Mutual Liability Insurance Co., 193 Tenn. 19, 241 S.W.2d 856; American Automobile Insurance Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52.

In Card v. Commercial Casualty Ins. Co., 20 Tenn. App. 132, 136, 95 S.W.2d 1281, 1285, the court stated:

"It is not necessary that the named assured signify his 'permission' in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense 'implied permission' from the named assured would be sufficient to bring a driver within the additional assured clause.

"But such 'implied permission' must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion and grants his own permission to a particular person." Cf. Howell v. Accident & Casualty Ins. Co. of Winterthur, 32 Tenn. App. 83, 221 S.W.2d 901.

In the instant case Mary Proffitt testified she was present at Lois Blalock's home on Halloween and heard Mayford Ogle instruct Lois to permit Bobby Proffitt to drive the Impala automobile "if he needs to go anywhere" and that she had seen Bobby driving the car "at

least a dozen times.'' Mrs. Proffitt also testified she had ridden in the car on several occasions when Bobby was driving and they had passed the Ogle home. On many of these occasions, according to Mrs. Proffitt, Lois Blalock and her children—or at least part of them—were passengers in the automobile.

Mayford Ogle denied he had told his daughter to let Bobby Proffitt use the automobile; that, to the contrary, he had instructed Lois and his other children never to let anyone outside the Ogle family drive their car. Mr. Ogle also testified he did not know his daughter had ever disobeyed his instructions.

Lois Blalock corroborated her father's testimony both as to his general instructions not to permit anyone to drive the automobile, and his statement that he had never told her to let Bobby Proffitt have the automobile. Mrs. Blalock did admit she had permitted Bobby to drive the automobile on numerous occasions, giving as her reason that she ''just hated not to mostly, I guess.''

The only other witness whose testimony had a bearing on the issue of permission was Mrs. Mayford Ogle, who stated that she had heard her husband tell Lois not to let anyone use the Ogle automobile in years past. This testimony was shown to be in conflict with an earlier statement of Mrs. Ogle, given under oath, that she ''didn't know anything about that.''

■■ From the above, it is apparent that the key to a finding on the issue of ''permission'' is the credibility of witnesses. We have pointed out on numerous occasions that the trial judge is in a much better position than we are to weigh and evaluate the testimony of a witness, where evidence is received by oral testimony, as the trial

judge has the opportunity to hear the witness and to observe his manner and demeanor while undergoing examination. Consequently, we give great weight to the trial judge's finding on the issue of credibility. Clardy v. Clardy, 23 Tenn.App. 608, 136 S.W.2d 526; Robert v. Ray, 45 Tenn.App. 280, 322 S.W.2d 435. With this in mind, we find no basis in the testimony in the record to say that the evidence preponderates against the trial judge's finding on the issue of credibility and the concommitant issue of permission.

The assignments of error directed to the trial judge's finding that Mayford B. Ogle gave permission to Bobby Proffitt to drive the Chevrolet automobile, thus making Bobby Proffitt an additional insured under the policy of insurance issued by the defendant company are overruled.

The defendant also has assigned as error the trial judge's finding that the defendant acted in bad faith in refusing to defend the Estate of Bobby Proffitt and in refusing to consider or make settlement, and that the defendant is liable to pay the judgment in excess of its policy limits. The defendant insists there is no evidence in the record to sustain this finding and conclusion.

In this cause, it having been found that Bobby Proffitt was in fact an additional insured under the terms of the policy issued Mayford Ogle by the defendant insurance company, it follows that the insurance company was under a contractual duty to defend the Estate of Bobby Proffitt against the claim of the heirs of Irene Williams and its failure to do so—whatever the basis of its refusal—made it liable for damages sustained as a direct result of the breach of contract. Hill Company v.

Georgia Casualty Co., 158 Tenn. 194, 11 S.W.2d 684; Anno. Liability Insurance—Refusal to defend, 49 A.L.R. 2d 694, 701-702.

▇ In the absence of a "bad faith" refusal to compromise the claim against the insured or to accept a reasonable settlement, the damages and the consequent liability of the insurer for breach of the contractual duty to defend an insured ordinarily is limited to the amount of the policy plus reasonable costs incurred in providing a defense for the insured. See Anno. 49 A.L.R.2d 711, et seq. But where the insurer is given the opportunity to settle and compromise the claim against its insured within the policy limits and refuses to do so in bad faith, the insurer is liable to pay a subsequent judgment which exceeds the policy limits. Cf. Aycock Hosiery Mills v. Maryland Casualty Co., 157 Tenn. 559, 11 S.W.2d 889; Southern Fire and Casualty Company v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785; Tennessee Farmers Mutual Ins. Co. v. Hammond, 43 Tenn.App. 62, 306 S.W.2d 13. See also State Auto Ins. Co. of Columbus, Ohio v. Rowland, 221 Tenn. 421, 427 S.W.2d 30, where the court held that the fact the insurer did not receive an offer of settlement from injured party within policy limits did not preclude a finding that the insurer failed to act in good faith in making no attempt to effectuate settlement.

"The mere refusal of an insurer to settle a claim for an amount within the policy limits does not, without more, render the insurer liable for a subsequent judgment which exceeds the policy limits. Nor does the injured person who has recovered a judgment stand in any better position than the insured, in regard to recovering the excess over the policy limits because of the insurer's

failure to accept a settlement. Where there is no opportunity to compromise a claim and the only wrongful act of the insurer is its refusal to defend, the liability of the insurer has been held limited to the amount of the policy plus costs, but this rule does not apply where insurer wrongfully refuses to accept a reasonable settlement within policy limits.'' Appleman, Insurance Law and Practice, Vol. 7A, Sec. 4711, pp. 558-560. See also, Anno: Liability Insurer—Duty to Settle, 40 A.L.R.2d. 168, 178, and see Southern Fire and Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785, wherein it is stated that ''[t]he courts seems to be unanimous in holding an insurer liable in tort for an excess over the policy limit where * * * [the insurer] has exclusive control over investigation and settlement of claims and its refusal to settle with the policy limit is fraudulent or in bad faith.''

In our view of the evidence set out above, we see no indication that the defendant insurance company acted either fraudulently or in bad faith in refusing to defend the Estate of Bobby Proffitt in the suit brought by the heirs of Irene Williams or in refusing to accept the offer of settlement submitted by counsel for the Williams' heirs. To the contrary, we think the evidence shows that the defendant acted under the reasonable and bona fide belief that Bobby Proffitt was not an ''additional insured'' under the terms of the policy, and that the defendant had no obligation to pay any claim brought against the Estate of Bobby Proffitt as the result of the accident involving the Ogle automobile. This belief was predicated on the unequivocal statement of the insured named in the policy, which was buttressed by the statement of Lois Blalock who delivered the Ogle automobile to Bobby Proffitt, that Bobby Proffitt was driving the Ogle automobile at the

time of the accident without the permission, either express or implied, of Mayford Ogle. We think an insurer, under circumstances such as depicted in this case, is justified in accepting as true the information given it by its named insured which has a bearing on the liability of the insurer under its policy, and that the insurer can act reasonably on the basis of the information without being guilty of bad faith.

The assignments of error directed to the trial judge's finding that the defendant insurance company acted in "bad faith" in failing to defend the Estate of Bobby Proffitt in the suit brought in behalf of the heirs of Irene Williams and in failing to accept an offer of settlement of the suit within the limits of the policy of insurance are sustained.

The judgment entered in the trial court in favor of the heirs of Irene Williams and against the defendant insurance company will accordingly be reduced to the policy limit of $10,000.00. Costs of the appeal are adjudged against the defendant insurance company and its surety.

McAmis, P. J., and Parrott, J., concur.