Betty Watson ESKRIDGE, Executrix of the Estate of Gene Bergan Eskridge, deceased; Betty Watson Eskridge, Individually; Betty Watson Eskridge, as next friend for Janet Louise Eskridge, an infant; Lillian McGee Passmore and Norman L. Passmore, Movants,

v.

EDUCATOR AND EXECUTIVE INSURERS, INC. and Selective Insurance Company and/or its successor, American Continental Insurance Company, Respondents.

Supreme Court of Kentucky.

Oct. 4, 1984.

Tom H. Pierce, James D. Rouse, Rouse, Rouse, Combs & Pierce, Versailles, for movants Eskridge.

Andrew M. Stephens, Shuffett, Karem & Mooney, Lexington, for movants Passmore.

Gary Barr, C. William Swinford, Stoll, Keenon & Park, Lexington, for respondent Educator.

Charles E. Duncan, Duncan & Lehnig, Louisville, for respondent Selective Ins.

VANCE, Justice.

The principal question in issue is the liability of an insuror for damages in excess of its policy limits in a case where the insuror erroneously denied coverage and refused to defend.

On September 8, 1968, an automobile operated by Lillian Passmore collided with an automobile operated by Gene Eskridge, who was killed in the accident. The Passmore vehicle was previously insured by Educator and Executive Insurer's, Inc. for the policy period of January 11, 1968 to July 11, 1968, subject to renewal. Educator mailed to Passmore a notice of premium due to renew the policy to January 11, 1969. This notice was mailed on June 20, 1968, and another premium notice was mailed on or about July 4, 1968.

In the meantime, Passmore claims that he mailed to Educator his check for the renewal premium on July 1, 1968, in an envelope provided him by the company for that purpose.

The company contends the check was never received by it and that the policy lapsed on July 11, 1968. It is agreed that no such check was deposited by the company or was ever charged against Passmore's bank account. The company conducts its business entirely through the United States mail; it does not usually, and did not in this case, mail any notice to its insured of the lapse of the policy.

Passmore notified the insurance carrier of the September 8, 1968 accident and was informed by the company that the policy had lapsed on July 11, 1968. Relying upon the fact that the policy had lapsed, the company thereafter refused to conduct any investigation, settlement negotiations, or defense of the claim.

The limit of liability under the policy was $20,000.00. An action was instituted by the movants, Eskridges, in which they obtained judgment against the Passmore's totalling more than $100,000.00. In amended pleadings, claim was then made against Educator and Executive Insurers, Inc. for the entire amount of the judgment.

The trial court made a finding of fact that Passmore did properly mail a check to the insuror on July 1, 1968, and held that such mailing constituted payment for the renewal of the policy and that the policy, as renewed, was in effect on the date of the accident. It also held the insuror liable for the entire amount of the judgment against Passmore with interest from the date of the judgment against Passmore.

On appeal by the insuror, the Court of Appeals affirmed that part of the judgment which held the policy was in effect but reversed as to the amount of recovery and limited the liability of the insuror to the amount of its policy limits.

Discretionary review was sought by movants but not by Educator and Executive Insurers, Inc. We Affirm in Part and Reverse in Part.

Three issues were presented to the Court of Appeals for review. They were: (1) Did the trial court err in its holding that the policy of insurance was in effect on the date of the accident? (2) Did the trial court err in its assessment of the amount of the recovery? (3) Did the trial court err in

allowing interest from the date of the original judgment?

The Court of Appeals affirmed the trial court judgment that the policy was in effect. The insuror has not moved for discretionary review but now contends in the brief before this court that once discretionary review has been granted to any party, the entire decision of the Court of Appeals is open for review. This court, however, has frequently limited discretionary review to less than all of the issues for which a movant has sought discretionary review upon the theory that if it is within the discretion of the court as to whether any review should be granted, it is also within the court's discretion to limit the issues to be reviewed.

We are not cited to any instance in which we have reversed a portion of a decision of the Court of Appeals adverse to a party in the absence of a request by tht party for review.

■ The decision of the trial court and the Court of Appeals that the policy in issue was in effect at the time of the accident is not properly before us for review.

Because the policy was in effect at the time of the accident, the insuror had certain contractual duties, among which was the implied covenant in the contract of insurance to exercise good faith to protect the insured from an unreasonable risk of having a judgment rendered against him greatly in excess of the limits of the policy. *Manchester Insurance and Indemnity Company v. Grundy,* Ky., 531 S.W.2d 493 (1975).

An issue of first impression in Kentucky is whether or not a good faith belief by an insuror that there is no policy coverage constitutes a defense to a claim against the insuror for damages in excess of the policy limits when it is determined that coverage did, in fact, exist. Other jurisdictions have reached opposite conclusions upon this issue. Some hold that an insurance company in determining whether it should settle a claim within its policy limits is entitled to consider all factors that may affect its ulti-mate liability, including the factor of whether coverage is afforded by the policy and that if it mistakenly, but in good faith, determines that no coverage exists, it has no liability beyond the policy limits. *National Service Fire Ins. Co. v. Williams,* 61 Tenn.App. 362, 454 S.W.2d 362 (1969); *Aetna Casualty & Surety Company v. Dichtl,* 78 Ill.App.3d 970, 34 Ill.Dec. 759, 398 N.E.2d 582 (1980); *Pennsylvania Threshermen & Farmer's Mutual Casualty Insurance Company v. Robertson,* 157 F.Supp. 405 (M.D.N.C.1957).

The view that a good faith but mistaken belief that the policy does not provide coverage is not a defense to claims for bad faith failure to settle within the policy limits has been adopted in *Trahan v. Central Mutual Insurance Company,* 219 So.2d 187 (La.App.1969); *Jenkins v. General Accident, Fire and Life Assurance Corporation,* 349 Mass. 699, 212 N.E.2d 464 (1965); *American Fidelity Fire Insurance Co. v. Johnson,* 177 So.2d 679 (1965); *Landie v. Century Indemnity Company,* 390 S.W.2d 558 (Mo.App.1965); *Comunale v. Traders & General Insurance Company,* 50 Cal.2d 654, 328 P.2d 198 (1958), and *Luke v. American Family Mutual Insurance Company,* 476 F.2d 1015 (S.Dak.1973).

■ It is our view that the insurance contract contains an obligation to defend and that a mistaken belief that coverage is not provided by the policy cannot justify a breach of the contract. If the contract to defend is breached, as it was in this case, the party aggrieved by the breach is entitled to recover all damages naturally flowing from the breach.

As was stated in *Comunale v. Traders & General Insurance Company, supra:*
"An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settle-

ment but also wrongfully refused to defend should be in no better position than if it had assumed the defense and then declined to settle. The insurer should not be permitted to profit by its own wrong." 50 Cal.2d 654, 328 P.2d 198, 202.

The policy here was in force and provided coverage. The respondent had a duty to defend, and the ultimate question is whether, in good faith, the respondent was required to accept an offer to settle the claim within the policy limits. Its erroneous belief that the policy had lapsed is not relevant to the determination of this question.

■ Bad faith is determined upon the basis of whether the refusal to settle subjected the insured to an unreasonable risk of having a judgment entered against him in excess of the policy limits. The factors to be considered are the probability of recovery, the likelihood that judgment will exceed the policy limits, negotiations for settlement, offers to settle within or for less than the policy limits, and whether the insured made a demand for settlement. *Manchester Ins. and Indemnity Co. v. Grundy, supra.*

The trial judge made a finding that there was a high degree of probability of recovery in excess of the policy limits based upon the fact that the decedent was a college educated person forty-five years of age; that two other family members were injured; that funeral expenses and property damage were incurred; that the defendant's vehicle struck the plaintiff's vehicle in a head-on collision in the plaintiff's lane of traffic, and that the policy limits were only $20,000.00.

■ The court found that the Eskridges offered to settle within the policy limits, and all parties encouraged settlement, but that Educator refused to conduct any settlement negotiations. The trial court concluded that this conduct amounted to bad faith on the part of the insuror. This determination by the trial court was not clearly erroneous.

■ We do not regard the allowance of interest from the date of the original judgment as pre-judgment interest.

The decision of the Court of Appeals is reversed insofar as it limits the liability of respondent, and the judgment of the trial court is affirmed and reinstated.

VANCE, GANT, AKER and LEIBSON, JJ., concur.

WINTERSHEIMER, J., concurs in the result only.

STEPHENS, C.J., not sitting.

STEPHENSON, J., dissents by separate opinion.

STEPHENSON, Justice, dissenting.

I agree with the majority that we should not review the issue that the policy of insurance was in effect at the time of the accident. It is the holding that in the circumstances presented here the insurance company did not exercise "good faith" in refusing to settle that I part company with the majority. This opinion places an insurance company in an impossible position. There is not even a suggestion in the record that the insurance company received the premium allegedly sent to it. Why would the insurance company think otherwise than that the policy lapsed for nonpayment of premium? There is no question that the refusal to defend was made in good faith. I can understand how there would be a later determination that the insurance company was in error in refusing to defend and liable for the limits of the policy. It is the judicial trapeze act which converts a good faith error into a lack of good faith in settling which makes for an impossible situation. With this holding, an insurance company can never litigate a good faith refusal to defend a case. I am of the opinion the majority opinion is not sound, particularly in view of the fact that the determination that the insurance company had a duty to defend was not made until after judgment was entered on the trial of the tort action. This insurance company never had a chance to consider an

offer of compromise. At the very least, there should be some legitimate reason in the record why Passmore did not settle. He had the same opportunity and had control of his case with retained counsel.

I would hold as clearly erroneous the finding of the trial court as to "bad faith" and affirm the Court of Appeals. Accordingly I dissent.