NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0445n.06

No. 23-5247

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Oct 16, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CARRIE BLANKENSHIP, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| SHELTER MUTUAL INSURANCE COMPANY, a | ) | DISTRICT OF KENTUCKY |
| Missouri Insurance Company, qualified in Kentucky, | ) | |
|  | ) | |
| Defendant, | ) | OPINION |
|  | ) | |
| GUIDEONE MUTUAL INSURANCE COMPANY, | ) | |
| an Iowa Insurance Company, qualified in Kentucky, | ) | |
|  | ) | |
| Defendant-Appellee. | ) | |

Before: CLAY, KETHLEDGE, and MATHIS, Circuit Judges

**MATHIS, Circuit Judge.** Carrie Blankenship appeals the district court's grant of summary judgment to GuideOne Mutual Insurance Company, her former employer's insurer. Blankenship claims GuideOne breached its duty to defend her in two state-court cases, failed to indemnify her for the judgments resulting from the cases, denied coverage to her in bad faith, and otherwise violated Kentucky public policy. For the reasons set forth below, we affirm.

**I.**

**A.  Factual background and state-court proceedings.**

Blankenship is the former director of Kidz University, Inc., a daycare in Louisville, Kentucky (the "Daycare"). In May 2015, Child Protective Services received a complaint from a

parent of a child at the Daycare, alleging that Blankenship was physically abusing children in her care. After the Daycare's surveillance footage showed Blankenship using physical force against two children on multiple occasions, Blankenship was charged with four counts of fourth-degree assault. She pleaded guilty to two of those counts.

The two children Blankenship physically abused, D.E. and J.T., and their guardians sued Blankenship, the Daycare, and others in Kentucky state court ("*Ensey I*"). In their amended complaint, the *Ensey I* plaintiffs alleged that Blankenship and another Daycare employee, Nikoletta Nunley (who was neither sued nor charged because the authorities could not locate her), "physically [and] violently abused" the children. R. 5-2, PageID 88. The plaintiffs sued Blankenship for assault and battery, alleging she "struck Plaintiff D.E. eleven (11) times on the body" and "slammed J.T. headfirst into a door frame," amongst other acts of intentional violence. *Id.* at 91. They also claimed Blankenship and her codefendants intentionally caused the children emotional distress, "fail[ed] to provide for the safety of individuals such as D.E. and J.T. on the [Daycare's] premises," "fail[ed] to provide adequate and timely warnings to prevent such abuse," and "fail[ed] to hire and properly train and supervise [the] daycare personnel," including Nunley, "to prevent such abuse, assault and battery as D.E. and J.T. suffered from occurring." *Id.* at 93–96.

Shortly after the *Ensey I* plaintiffs filed their amended complaint, Blankenship contacted GuideOne Mutual Insurance Company, the Daycare's commercial general liability insurance provider. The GuideOne policy insured the Daycare and its "'executive officers' and directors"—including Blankenship—against "bodily injury" caused by an "occurrence" on the Daycare's premises. R. 60-24, PageID 1769, 1781; R. 5-2, PageID 87.

GuideOne defended Blankenship's codefendants in *Ensey I*, ultimately settling all claims against them and indemnifying them. But GuideOne declined to defend Blankenship. Without a GuideOne-provided defense, Blankenship defended herself pro se through trial. The jury ruled against Blankenship, awarding $1.5 million to D.E. and $2.5 million to J.T.

Not long after *Ensey I* concluded, the mother of two other children, H.B. and N.B., who attended the Daycare sued Blankenship and the other *Ensey I* defendants on her children's behalf ("*Beinlein*"). The *Beinlein* complaint included many of the same theories of recovery as *Ensey I*'s operative complaint, such as assault, premises liability, failure to train and supervise Daycare staff (specifically Nunley), and intentional infliction of emotional distress. Once again, GuideOne defended every defendant except Blankenship. Blankenship never appeared for the *Beinlein* case, so the court entered a $650,000 default judgment against her. GuideOne has not indemnified her for those damages.

## B. Federal-court proceedings.

After Blankenship's homeowner's insurer, Shelter Mutual Insurance Company, also declined to indemnify her for the *Ensey I* and *Beinlein* judgments, the *Ensey I* plaintiffs filed suit against Shelter in state court to recover their judgment against Blankenship. Shelter removed the suit to federal court, and the district court ultimately granted summary judgment in Shelter's favor. *Ensey ex rel. D.E. v. Shelter Gen. Ins. Co. ("Ensey II")*, No. 3:17-cv-642-RGJ, 2020 WL 807530 (W.D. Ky. Feb. 18, 2020). The district court determined that Shelter's policy did not cover Blankenship's liability because it excluded all damages arising out of the insured's "business activities." *Id.* at *4.

Meanwhile, Blankenship initiated this action against GuideOne and Shelter in state court in September 2019, which the defendants promptly removed to the same district court that decided

*Ensey II*. Blankenship claimed that GuideOne's policy bound it to defend her in the *Ensey I* and *Beinlein* suits, and indemnify her for the damages arising from them. The court dismissed the claims against Shelter soon after it entered judgment in *Ensey II*, as Blankenship's claims against Shelter necessarily failed on the same grounds as the *Ensey II* plaintiffs did. After discovery, Blankenship and GuideOne both moved for summary judgment. The court granted judgment in GuideOne's favor, ruling that Blankenship's actions were excepted from the policy's coverage by several of its express exclusions, including those for "expected or intended" acts and claims "arising out of the willful or intentional violation of any statute." R. 86, PageID 2217–21; R. 60-24, PageID 1770, 1778. After the district court denied Blankenship's motion to alter or amend the judgment, she timely appealed. Blankenship only appeals the grant of summary judgment to GuideOne; she does not appeal the dismissal of her claims against Shelter.

## II.

While the denial of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) is generally reviewed for abuse of discretion, we review de novo when, as here, the Rule 59(e) motion sought review of a grant of summary judgment. *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023).

In a diversity case, we apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Here, the parties agree that Kentucky law applies.

**III.**

On appeal, Blankenship argues that the district court erred in granting summary judgment to GuideOne because GuideOne had a duty to defend and indemnify Blankenship in *Ensey I* and *Beinlein* under the terms of the GuideOne policy.  Blankenship also appeals the dismissal of her bad-faith claim against GuideOne and her claim that GuideOne violated Kentucky public policy.  We address each argument below.

### A.      Duty to defend.

Blankenship's duty-to-defend claim requires us to interpret the GuideOne policy.  Interpretation of an insurance contract is a question of law.  *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007).

Kentucky courts determine whether the insurer has a duty to defend its insured at the outset of litigation "by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (applying Kentucky law).  "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).  "The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *Id.* (citing *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky. 1984)).  But the complaint's allegations "cannot compel a defense if coverage does not exist." *Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992).

The district court ruled that two exclusions in the policy precluded coverage.  But we "can affirm a decision of the district court on any grounds supported by the record, even if different

from those relied on by the district court." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (per curiam)).

The GuideOne policy provides that GuideOne has "no duty to defend the insured against any 'suit' seeking 'damages' for 'bodily injury' or 'property damage' to which the insurance does not apply." R. 60-24, PageID 1769. The policy applies to bodily injury or property damage if the injury or damage "is caused by an 'occurrence.'" *Id.* The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 1788.

The dispositive issue is whether Blankenship's actions (or inactions) constituted an accident. When, as here, "accident" is not defined in the policy, Kentucky courts define the term by its ordinary meaning. *Am. Mining Ins. Co. v. Peters Farms, LLC*, 557 S.W.3d 293, 296 (Ky. 2018). "Inherent in the plain meaning of 'accident' is the doctrine of fortuity," which requires courts to analyze the insured's intent and control. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010). Specifically, we consider "1) whether the insured intended the event to occur; and 2) whether the event was a 'chance event beyond the control of the insured.'" *Martin/Elias Props., LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018) (quoting *Cincinnati Ins.*, 306 S.W.3d at 76). "If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured." *Id.*

The *Ensey I* and *Beinlein* complaints describe intentional acts of assault and other abusive conduct committed by Blankenship against minors at the Daycare. Blankenship's assaultive actions do not constitute an accident. She intended to harm the minors. "[A] loss or harm is not

fortuitous if the loss or harm is caused intentionally by [the insured]." *Cincinnati Ins.*, 306 S.W.3d at 74 (second alteration in original) (citation omitted).

Blankenship fails the control prong as well. Blankenship directly supervised Nunley, who also assaulted and abused minors at the Daycare along with Blankenship and in Blankenship's presence. As the Daycare's director who directly interacted with the children, Blankenship could certainly control whether the children were safe from abuse, whether she warned others that the children were being abused, and how she trained and supervised Daycare staff. Thus, Nunley's abuse, which at times took place in Blankenship's presence, was not a chance event. "For an event to be fortuitous, and therefore an accident, it must be 'beyond the power of any human being to bring . . . to pass, [or is] . . . within the control of third persons[.]'" *Martin/Elias Props.*, 544 S.W.3d at 644 (first alteration in original) (quoting *Cincinnati Ins.*, 306 S.W.3d at 76). Blankenship had direct control and power over the assaults and abuse of the minors at the Daycare.

Because the *Ensey I* and *Beinlein* actions did not arise from an accident, Blankenship was not entitled to a defense under the terms of the GuideOne policy. Blankenship resists this conclusion and argues that GuideOne owed her a defense in *Ensey I* and *Beinlein* because the claims sounded in negligence. "Negligence implies accident," says Blankenship, "which is covered as an 'occurrence' by the GuideOne policy at issue." D. 15 at p.25. But under Kentucky law, "accident" is not synonymous with negligence. In *Martin/Elias*, the Kentucky Supreme Court considered a CGL policy with language identical to that at issue here; it covered damage caused by "an occurrence," which was defined as "an accident." *Id.* at 641. The court held that the insurer had no duty to defend or indemnify its insured real-estate developer when a contractor's poor construction work severely damaged a building. *Id.* at 640–41. While the contractor did not intend to damage the building, he had full control over the construction process that caused the damage.

*Id.* at 643–44. The court upheld the denial of coverage even though the developer sued the contractor for negligence, as negligence alone does not make something an "accident" under Kentucky law. *Id.*

Like the insurer in *Martin/Elias*, who had no duty to defend the contractor accused of negligent construction because he had control over the construction process, GuideOne had no duty to defend Blankenship because she had control over her allegedly negligent acts. *See Cincinnati Ins.*, 306 S.W.3d at 75 (holding that "faulty workmanship" does not "constitute[] an occurrence under a CGL policy," ensuring "that the ultimate liability falls to the one who performed the *negligent work* . . . instead of the insurance carrier" (emphasis added, citation and internal quotation marks omitted)); *McBride v. Acuity*, 510 F. App'x 451, 454 (6th Cir. 2013) (applying Kentucky law and holding that because a contractor had control over the building of a home, any subsequent structural defects could not be considered "accidents" and thus there was no duty to defend).

Blankenship contends that the *Ensey I* complaint triggered GuideOne's duty to defend because it "used the words negligence, negligent or negligently approximately nineteen (19) times." D. 15 at p. 25. But as *Martin/Elias* shows, simply pleading negligence does not compel the insurer to defend the insured. 544 S.W.3d at 641, 643. Blankenship also argues that GuideOne cannot now assert that it had no duty to defend her because it should have done so in a declaratory judgment action right after it denied her a defense. But she cites no authority holding that an insurer must bring a declaratory-judgment action every time it declines to defend an insured. The case Blankenship does cite, *Eskridge v. Educator and Executive Insurers*, is inapposite. *See* 677 S.W.2d 887, 889–90 (Ky. 1984). That case held only that an insurer who is judicially determined to have wrongfully denied the insured a defense is on the hook for everything the insured lost in

the ensuing litigation. *Id.* It says nothing about *when* the insurer must litigate whether it has a duty to defend.

### B.     Duty to indemnify.

Because GuideOne had no duty to defend Blankenship, it also had no duty to indemnify Blankenship. "The duty to defend is separate and distinct from the" duty to indemnify. *James Graham Brown Found.*, 814 S.W.2d at 279. The duty to defend is also "broader than the duty to indemnify." *Id.* at 280. Thus, if GuideOne had no duty to defend Blankenship in *Ensey I* and *Beinlein*, it also had "no duty to indemnify [Blankenship] for any damages [she] becomes obligated to pay in those lawsuits." *Westfield Nat'l Ins. Co. v. Quest Pharms., Inc.*, 57 F.4th 558, 562 (6th Cir. 2023) (applying Kentucky law). Blankenship's indemnification claim fails.

### C.     Bad-faith claims.

Blankenship asserts claims for contractual breach of the implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, and bad faith in violation of Ky. Rev. Stat. Ann. § 304.12-230. The Kentucky Supreme Court has "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions[.]" *Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 26 (Ky. 2017) (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)). To establish a bad-faith claim, an insured must prove the following: "(1) the insurer must be obligated to pay the insured's claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.

1993)). As explained above, GuideOne was not obligated to pay Blankenship's claims, so she cannot prove a bad-faith claim.

### D.      Kentucky public-policy claim.

Blankenship also claims on appeal that GuideOne's denial of coverage violated Kentucky public policy. She argues that GuideOne's denial breached a Kentucky regulation mandating that all child-care centers carry liability insurance, and GuideOne's denial effectively left her uninsured. S*ee* 922 KY. ADMIN. REGS. 2:090. The district court did not discuss any public-policy claim in its order granting GuideOne's motion for summary judgment because Blankenship "failed to articulate it in her motion for summary judgment." R. 94, PageID 2425. Blankenship contends that the district court erred because she raised the issue in her response to GuideOne's motion for summary judgment. That is a stretch. Blankenship only cited the regulation in her response brief to "remind[] the court that the insurance policy at issue was . . . required by state law[.]" R. 70, PageID 1939. Blankenship did not support the citation with any argument that the regulation compelled GuideOne to defend and indemnify Blankenship. Blankenship also did not plead a claim based on the regulation in her complaint, nor is there anything that we could construe as a claim based on Kentucky public policy in the complaint. We are "not compelled to hear, nor should [we] hear, an issue not presented to the district court." *United States v. Seventeen Firearms*, 170 F. App'x 418, 419 (6th Cir. 2006) (alteration in original) (quoting *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993)); *see Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 n.4 (6th Cir. 1999) (holding that "unpled claims . . . are not before us on appeal"). And even if Blankenship raised her public-policy claim in her response brief, the district court had no obligation to consider a claim mentioned for the first time in response to a motion for summary judgment. *See Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 789 (6th

Cir. 2005) (affirming district court that granted summary judgment when plaintiff "advanced new claims 'that were never plead'" in her opposition to the motion).

## IV.

For these reasons, we **AFFIRM** the district court's judgment.